81 F.3d 103
 28 Bankr.Ct.Dec. 1134, Bankr. L. Rep. P 76,951,
96 Cal. Daily Op. Serv. 2326,
96 Daily Journal D.A.R. 3915
 In re LAKESHORE VILLAGE RESORT, LTD., Debtor.
Linda E. STANLEY, United States Trustee for Region 17, Appellant,
v.
CROSSLAND, CROSSLAND, CHAMBERS, MacARTHUR & LASTRETO, Appellee.
 No. 94-16365.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Dec. 7, 1995.
Decided April 5, 1996.
 
 Jeanne M. Crouse, Executive Office for United States Trustees, Department of Justice, Washington, D.C., for the appellant.
 Rene Lastreto, II, Crossland, Crossland, Chambers, Lastreto & Knudson, Fresno, California, for the appellee.
 Appeal from the United States District Court for the Eastern District of California Robert E. Coyle, District Judge, Presiding. No. CV-93-05784-REC.
 Before: WALLACE and THOMPSON, Circuit Judges, and SEDWICK,* District Judge.
 WALLACE, Circuit Judge:
 
 
 1
 United States Trustee Stanley appeals from the district court's decision reversing and remanding a bankruptcy court order that had denied an attorneys' fee award. After determining that 11 U.S.C. § 330(a) authorized a fee award, the district court remanded for the bankruptcy court to determine the amount. The district court exercised jurisdiction pursuant to 28 U.S.C. § 158(a). Although the United States Trustee timely filed her notice of appeal, we dismiss the appeal for lack of jurisdiction pursuant to 28 U.S.C. §§ 158(d) and 1291.
 
 
 2
 * Lakeshore Village Resort, Ltd., a limited partnership, filed a petition for relief under Chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 1101-1174, on March 8, 1985. Chapter 11 Trustee Ford retained Crossland, Crossland, Chambers, MacArthur & Lastreto (Crossland) as his counsel and converted the bankruptcy proceeding to a liquidation under Chapter 7 of the Bankruptcy Code, 11 U.S.C. §§ 701-766. On November 6, 1992, Ford filed a Final Report and Proposed Distribution (Final Report), which included a request for reimbursement of $3,633 in attorneys' fees. The United States Trustee raised four objections to the Final Report: (1) as the Chapter 7 trustee, Ford had incurred a tax penalty of $3,300 for failure to file a partnership tax return; (2) Ford retained in a personal account $846.14 in interest derived from estate funds; (3) Ford did not pursue legal action against Lakeshore Village general partners; and (4) Ford failed to produce documents required at a Rule 2004 examination. Crossland represented Ford in his defense against the latter three objections, and Ford eventually prevailed on all but the second objection.
 
 
 3
 A fee application was submitted pursuant to 11 U.S.C. § 330, which requested $10,015 in fees and $1,184.83 in expenses for Crossland's work in connection with defending Ford's Final Report. The United States Trustee objected to the fee application, arguing that the fees were incurred for Ford personally, not for services benefitting the estate. The bankruptcy court agreed and denied the fee application, holding that Crossland "should not be able to seek compensation with regard to matters affecting the trustee's conduct in the administration of the estate." Because the bankruptcy court held that Crossland's services could not be charged against the estate, it declined to consider whether they were "necessary" under 11 U.S.C. § 330(a).
 
 
 4
 Crossland appealed to the district court, which vacated the bankruptcy court's order and remanded because the bankruptcy court improperly applied "section 330 and its case progeny; and without citing authority for doing so, employed an unsupported test of whether attorney services bear on the trustee personally." The United States Trustee appealed from the district court's decision. She argues, as does Crossland, that the district court decision was final under 28 U.S.C. § 158(d). She asks us to reverse and remand with instructions to affirm the order of the bankruptcy court.
 
 II
 
 5
 Although both parties contend that we have jurisdiction over this appeal, we have an independent duty to examine the propriety of our subject matter jurisdiction. United States v. Stone (In re Stone), 6 F.3d 581, 583 n. 1 (9th Cir.1993). In this case, the district court exercised appellate jurisdiction over a decision of the bankruptcy court pursuant to 28 U.S.C. § 158(a). That provision gives district courts jurisdiction to hear appeals from "final judgments, orders, and decrees, and with leave of the court, from interlocutory orders and decrees" of the bankruptcy court. Id. The bankruptcy court's order denying Crossland's fee application constituted a final decision under section 158(a). Thus, the district court properly asserted jurisdiction.
 
 
 6
 Section 158(d) provides that "[t]he courts of appeal shall have jurisdiction of appeals from all final decisions, judgments, orders, and decrees entered under subsections (a) and (b) of this section." Id. § 158(d). Our jurisdiction under section 158(d) therefore requires a final decision from the district court. Where, as here, the district court acts in its bankruptcy appellate capacity, 28 U.S.C. § 1291 may also give us appellate jurisdiction to review final decisions. See Connecticut National Bank v. Germain, 503 U.S. 249, 253, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391 (1992) (Germain ); Vylene Enterprises, Inc. v. Naugles, Inc. (In re Vylene Enterprises, Inc.), 968 F.2d 887, 891 (9th Cir.1992) (Vylene ). The issue presented in this case, therefore, is whether vacating the bankruptcy court's order and remanding for further proceedings constitutes a "final decision" of the district court under either section 158(d) or section 1291.
 
 
 7
 Ordinarily, a district court order is final if it affirms or reverses a final bankruptcy court order. King v. Stanton (In re Stanton), 766 F.2d 1283, 1287 (9th Cir.1985) (Stanton ) (determining whether decision of bankruptcy appellate panel (BAP) was final under section 158(d)). Finality is more difficult to determine where the district court reverses a final order of the bankruptcy court and remands the case. Vylene, 968 F.2d at 895. Prior to the Supreme Court's decision in Germain, our decisions held that the finality standard applied in bankruptcy proceedings is more flexible than that applied in other civil proceedings, because the "unique nature of bankruptcy procedure dictate[d] that we take a pragmatic approach to finality." Bonner Mall Partnership v. U.S. Bancorp Mortgage Co. (In re Bonner Mall Partnership), 2 F.3d 899, 903-04 & n. 10 (9th Cir.1993) (Bonner Mall ), dismissed as moot, --- U.S. ----, 115 S.Ct. 386, 130 L.Ed.2d 233 (1994); see also Vylene, 968 F.2d at 894-95; Stanton, 766 F.2d at 1285-86, Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3926.2 at 174 (1995 Supp.) ("Virtually all decisions agree that the concept of finality applied to appeals in bankruptcy is broader and more flexible than the concept applied in ordinary civil litigation."). This liberal finality standard allowed us to exercise appellate jurisdiction over a substantially greater number of cases than the traditional finality standard applied in nonbankruptcy proceedings under section 1291, which asks merely whether the district court decision "ends the litigation on the merits and leaves nothing for the district court to do but execute the judgment." Firestone Tire & Rubber Co. v. Risjord, 449 U.S. 368, 373, 101 S.Ct. 669, 673, 66 L.Ed.2d 571 (1981) (internal quotations omitted).
 
 
 8
 Germain cast some doubt on our cases holding that section 158(d) provides broader appellate jurisdiction in bankruptcy proceedings than that provided by section 1291 in other civil litigation. Germain did not define "final decision" under section 158(d); it determined whether courts of appeals have jurisdiction over appeals from interlocutory orders issued by a district court sitting as a court of appeals in bankruptcy. Germain, 503 U.S. at 250, 112 S.Ct. at 1147-48. The Court held that such interlocutory orders are appealable only under 28 U.S.C. § 1292(b). Id. at 251-52, 112 S.Ct. at 1148-49. Section 158(d) does not confer jurisdiction over interlocutory orders, even under a flexible finality standard. See id. at 252, 254, 112 S.Ct. at 1148-50. The difference between the scope of jurisdiction under section 158(d) and section 1291, the Court stated, is only that section 158(d) "confers jurisdiction over final decisions of the appellate panels in bankruptcy acting under [section] 158(b)." Id. at 253, 112 S.Ct. at 1149. Because sections 158(d) and 1291 afford essentially the same jurisdiction, it is logical to conclude that "both statutes would have to have the same finality standards in bankruptcy proceedings." Vylene, 968 F.2d at 892. Thus, Germain implies that a decision appealable under section 158(d) also should be appealable under traditional applications of section 1291 in nonbankruptcy proceedings. Id. at 894.
 
 
 9
 Germain did not specifically address the flexible approach courts of appeals have given finality in bankruptcy proceedings. Although some courts have speculated that Germain may have curtailed the more liberal standard applied under section 158(d), none has thus far so ruled. See, e.g., Conroe Office Bldg. Ltd. v. Nichols (In re Nichols), 21 F.3d 690, 692 n. 8 (5th Cir.), cert. denied, --- U.S. ----, 115 S.Ct. 422, 130 L.Ed.2d 337 (1994); Vylene, 968 F.2d at 892, 894; but see Bonner Mall, 2 F.3d at 904 n. 11 (stating in dicta that "nothing in Germain casts doubt upon the liberal standard for finality we have adopted regarding § 158(d)"). We too have no need to determine whether Germain stands for the proposition that the finality standard applied to appeals in bankruptcy proceedings is the same as that applied in other civil appeals because we hold that the district court's decision remanding this case to the bankruptcy court is not final under either standard.
 
 III
 
 10
 Stanton held that when an intermediate appellate court remands a case to the bankruptcy court, "the appellate process likely will be much shorter if we decline jurisdiction and await ultimate review on all the combined issues." Stanton, 766 F.2d at 1287-88 (internal quotations omitted). This conclusion follows naturally upon consideration of the policies furthered by the rule of finality, such as maintaining the proper relationship between trial and appellate courts. See id. at 1287; Sambo's Restaurants v. Wheeler (In re Sambo's Restaurants, Inc.), 754 F.2d 811, 814-15 (9th Cir.1985). In dicta, Stanton stated that where a case is remanded for additional fact-finding and involves a central legal issue, appellate jurisdiction may obviate the need for fact-finding or materially aid the disposition of the case on remand. Stanton, 766 F.2d at 1288 n. 8. Stanton did not propose this dicta as an independent test for determining whether we have jurisdiction under section 158(d). Nor did Stanton include a consideration of the policies embodied in the rule of finality. Nevertheless, Zolg v. Kelly (In re Kelly), 841 F.2d 908, 911 (9th Cir.1988), applied Stanton 's dicta and held that a BAP decision reversing a final order of the bankruptcy court and remanding for reconsideration of the proper test to determine "substantial abuse" under 11 U.S.C. § 707(b) was appealable under section 158(d). Kelly emphasized that in addition to the considerations in Stanton, the policies of judicial efficiency and finality were best served by resolving the issues presented before remand. Id.
 
 
 11
 Subsequent to Kelly, the Supreme Court decided Germain. Under the direction of Germain, Vylene refined Stanton and Kelly and set forth the considerations we should balance in determining whether a district court's decision remanding a case to the bankruptcy court is a final decision under section 158(d): (1) the need to avoid piecemeal litigation; (2) judicial efficiency; (3) the systemic interest in preserving the bankruptcy court's role as the finder of fact; and (4) whether delaying review would cause either party irreparable harm. Vylene, 968 F.2d at 895-96.
 
 
 12
 We applied Vylene in Bonner Mall and Dominguez v. Miller (In re Dominguez), 51 F.3d 1502 (9th Cir.1995) (Dominguez ). In Bonner Mall, we recognized that Vylene set forth the proper approach for determining whether we could exercise jurisdiction. For additional guidance, however, we referred to the Stanton dicta and considered whether exercising our jurisdiction would obviate the need for further factfinding and assist the bankruptcy court in reaching its disposition on remand. Bonner Mall, 2 F.3d at 904. Determining that both of these considerations supported our jurisdiction, we then summarily asserted that under the particular circumstances presented in Bonner Mall, the "policy of judicial economy ... strongly outweigh[ed] the need to avoid piecemeal appeals." Id. at 905. Without further analysis of the governing considerations set forth in Vylene, we assumed jurisdiction.
 
 
 13
 Dominguez again recognized the four considerations mandated in Vylene. Dominguez, 51 F.3d at 1506. As in Bonner Mall, Dominguez also framed our analysis in terms of the Stanton dicta and assumed jurisdiction. Id. at 1506-07. However, by choosing to focus on the Stanton dicta, Dominguez failed to analyze explicitly any of the Vylene factors. Because Dominguez could not have overruled Vylene, we must assume that the court implicitly held that the considerations set forth in Vylene weighed in favor of exercising jurisdiction. See Alquisalas v. INS, 61 F.3d 722, 724 (9th Cir.1995) ("[w]ithout direction by an en banc court, [ ] we are not at liberty to disregard language in [prior] cases"); see also United States v. Camper, 66 F.3d 229, 232 (9th Cir.1995) (only the court "sitting en banc may overturn existing Ninth Circuit precedent"); Palmer v. Sanderson, 9 F.3d 1433, 1437 n. 5 (9th Cir.1993) ("[a]s a general rule, a panel not sitting en banc may not overturn circuit precedent").
 
 
 14
 We recognize that the dicta in Stanton provided the foundation for the approach we ultimately developed in Kelly and Vylene. However, Kelly and Vylene substantially modified the pre-Germain dicta in Stanton to ensure that we would not exercise jurisdiction when it would frustrate the important policies of promoting judicial efficiency, respecting finality, and avoiding piecemeal litigation. Therefore, to ensure a thorough balance of all the requisite considerations, we focus our analysis, as we must, solely on the approach set forth in Vylene to determine whether the district court's decision in this case was final under section 158(d).
 
 
 15
 First, asserting appellate jurisdiction over this case at this time would present classic problems caused by piecemeal litigation. The United States Trustee essentially requests us to reverse the district court's holding that the bankruptcy court failed to apply section 330(a), fashion a test for determining what constitutes "necessary" services under the statute, then apply that test to the facts of this case, and determine that the bankruptcy court correctly found Crossland's services unnecessary. Neither the district court nor the bankruptcy court, however, has had the opportunity to apply section 330(a) to determine whether it authorizes Crossland to recover the expenses it incurred defending Ford's Final Report. Thus, it is likely that we will review this case again after the bankruptcy court and the district court have applied section 330(a). Only in extraordinary cases will we assert our jurisdiction where circumstances suggest that we will review the same issues in the same case a second time. Thus, the need to avoid piecemeal litigation favors dismissal of this appeal.
 
 
 16
 Second, dismissing this appeal would conserve judicial resources by reviewing the issues presented in this case one time only, thereby shortening the appellate process. See Stanton, 766 F.2d at 1287-88.
 
 
 17
 Third, dismissing this appeal would preserve the bankruptcy court's role as the finder of fact by allowing it to determine whether Crossland's services were "necessary" under section 330(a) before we review its decision. Although the issue presented may be characterized as predominately "legal," the bankruptcy court clearly has not developed the record with respect to section 330(a) because it has not yet applied that statute.
 
 
 18
 Fourth, whether delaying review would cause either party irreparable harm is not implicated here. "No irreparable harm is imminent." Vylene, 968 F.2d at 897. Thus, this consideration also militates in favor of declining jurisdiction.
 
 
 19
 Because each of the Vylene inquiries counsels against our jurisdiction over this appeal, it is clear that even under a more liberal finality standard that we have applied in appeals from bankruptcy proceedings, the district court did not issue a final decision. Thus, we have no jurisdiction under either a strict or liberal interpretation of section 158(d) and none pursuant to section 1291.
 
 
 20
 APPEAL DISMISSED.
 
 
 
 *
 Honorable John W. Sedwick, United States District Judge, District of Alaska, sitting by designation