In re Dennis Leroy SAXMAN, Debtor,

Dennis Leroy Saxman,
Plaintiff–Appellee,

v.

Educational Credit Management
Corporation, Defendant–
Appellant,

and

Department of Education, Defendant.

No. 01–35620.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 8, 2003.

Filed April 14, 2003.

Daniel Fisher, St. Paul, MN, for the defendant-appellant.

Dennis L. Saxman, Seattle, WA, pro se plaintiff-appellee.

Jeffrica Jenkins Lee, Department of Justice, Civil Division, Washington, DC, for amicus curiae United States Department of Education.

Before WALLACE, TROTT, and TASHIMA, Circuit Judges.

Opinion by Circuit Judge TASHIMA; Dissenting opinion by Senior Circuit Judge WALLACE.

## OPINION

TASHIMA, Circuit Judge.

This case presents the question of whether an educational loan may be partially discharged consistent with 11 U.S.C. § 523(a)(8) of the Bankruptcy Code. We conclude that bankruptcy courts may partially discharge student debt pursuant to their equitable authority under 11 U.S.C. § 105(a).

## BACKGROUND

On September 27, 1999, Appellee Dennis Saxman sought to discharge several of his student loans in bankruptcy on the ground that paying them off would cause him an undue hardship within the meaning of 11 U.S.C. § 523(a)(8). This case concerns two of those loans: one held by the United States Department of Education and a much larger consolidated loan held by Appellant Educational Credit Management Corporation ("ECMC").

The bankruptcy court found that Saxman would not suffer undue hardship if he was made to repay the $4,764 to the Department of Education, but that he would

suffer undue hardship if he were held to his ECMC debt of $83,927. In support of its finding, the court considered that Saxman had a net income of $2,900 per month, lived a "very frugal lifestyle," and had disposable income of about $1,000 per month. The court found that under the standard 10–year repayment plan, the monthly payments of the combined ECMC and Department of Education loans would total $1,100 per month, or $100 per month more than his disposable monthly income. The court concluded that Saxman, who was 50 years of age at the time of trial, could not reasonably pay off his student loans during his working lifetime. The court added that it felt constrained by *United Student Aid Funds Inc. v. Taylor (In re Taylor)*, 223 B.R. 747 (B.A.P. 9th Cir. 1998), to reject ECMC's suggestion that the court discharge only the portion of the loan that Saxman was unable to pay.

On appeal, the district court vacated the bankruptcy court's discharge order and remanded for further proceedings consistent with this court's intervening decision in *Graves v. Myrvang (In re Myrvang)*, 232 F.3d 1116 (9th Cir.2000), which the district court interpreted as permitting the partial discharge of student debt. *Saxman v. U.S. Dep't of Educ. (In re Saxman)*, 263 B.R. 342 (W.D.Wash.2001).

## APPELLATE JURISDICTION

Saxman initially contends that the district court's decision to vacate the bankruptcy court's order and remand for further proceedings was not a final decision and therefore not appealable. Under 28 U.S.C. § 158(d), this court has jurisdiction to hear appeals "from all final decisions, judgments, orders, and decrees" entered by a district court on appeal from a bankruptcy court. Because of the unique nature of bankruptcy proceedings, we apply a pragmatic approach to determining finality. *Vylene Enters., Inc. v. Naugles, Inc. (In re Vylene Enters., Inc.)*, 968 F.2d

887, 894–95 (9th Cir.1992). The factors considered in determining finality include: (1) the need to avoid piecemeal litigation; (2) judicial efficiency; (3) systemic interest in preserving the bankruptcy court's role as factfinder; and (4) whether further delay would cause either party irreparable harm. *Knupfer v. Lindblade (In re Dyer)*, 322 F.3d 1178, 2003 WL 1090176, *5 (9th Cir. Mar.13, 2003); *Scovis v. Henrichsen (In re Scovis)*, 249 F.3d 975, 980 (9th Cir.2001); *In re Vylene Enters., Inc.*, 968 F.2d at 895–96.

In *North Slope Borough v. Barstow (In re MarkAir, Inc.)*, 308 F.3d 1057 (9th Cir.2002), we summarized the law as follows:

If the matters on remand concern primarily factual issues about which there is no dispute, and the appeal concerns primarily a question of law, then the policies of judicial efficiency and finality are best served by our resolving the question now. On the other hand, if the district court remands for further factual findings related to a central issue raised on appeal, the district court's decision is usually not final. Even when the remand involves factfinding on a central issue, we may nonetheless exercise jurisdiction if that issue is legal in nature and its resolution either (1) could dispose of the case or proceedings and obviate the need for factfinding; or (2) would materially aid the bankruptcy court in reaching its disposition on remand.

*Id.* at 1060 (internal quotation marks and citations omitted).

In the present case, the district court remanded for further proceedings consistent with *Myrvang*, 232 F.3d 1116, specifically instructing the bankruptcy court to abandon its all-or-nothing approach and to calculate the portion of the ECMC loan that Saxman could pay with-

out causing him an undue hardship. In short, the remand order only requires the bankruptcy court to calculate how much Saxman could reasonably pay per month; it does not require anything beyond the task of computing the partial discharge of Saxman's loan.

As noted in *In re Fox,* 762 F.2d 54 (7th Cir.1985), "if all that remains to do on remand is a purely mechanical [or] computational ... task," such that the proceedings on remand are highly unlikely to generate a new appeal or to affect the issue that the disappointed party wants to raise on appeal, then immediately deciding the issue will save time without raising the spectre of piecemeal appeals. *Id.* at 55. In such circumstances, the decision of the district court is final for purposes of subject matter jurisdiction. *Id.*

This appeal also presents an independent question of law. *See Zolg v. Kelly (In re Kelly),* 841 F.2d 908, 911 (9th Cir. 1988). This case is therefore distinguishable from those cases in which we declined jurisdiction because the district court's remand order required factual development to clarify a central legal issue. *See Walthall v. United States,* 131 F.3d 1289, 1293 (9th Cir.1997) (declining jurisdiction because district court remanded for a "factual determination of whether damages and attorneys' fees should be awarded"); *King v. Stanton (In re Stanton),* 766 F.2d 1283, 1287 (9th Cir.1985) (declining jurisdiction because the BAP remanded for factual development of issues involved in a counterclaim that was improperly dismissed by the bankruptcy court). In those cases, we declined jurisdiction on the theory that we would be faced with an inadequate factual record, "making it difficult to identify the controlling legal issues." *Id.* However, in this case, the resolution of the legal issue is entirely independent of the factual issues, which, in any event, are admitted as true and not in dispute. *See Crevier v.*

*Welfare & Pension Fund for Local 701 (In re Crevier),* 820 F.2d 1553, 1555 (9th Cir. 1987) (asserting jurisdiction where the facts in the complaint are admitted as true and where no factual issues are pending that would impede the review of the legal issues); *Turgeon v. Victoria Station Inc. (In re Victoria Station Inc.),* 840 F.2d 682, 684 (9th Cir.1988) (similar).

Because this appeal concerns a question of law and the remand concerns only the calculation of a partial discharge, we conclude that the policies of judicial efficiency and finality weigh in favor of our resolving the question now. *DeMarah v. United States (In re DeMarah),* 62 F.3d 1248, 1250 (9th Cir.1995) ("If the matters on remand concern primarily factual issues about which there is no dispute, and the appeal concerns primarily a question of law, then the 'policies of judicial efficiency and finality are best served by our resolving the question now.' ") (quoting *In re Kelly,* 841 F.2d at 911).

## STANDARDS OF REVIEW

■■■ We review the district court's decision on appeal from a bankruptcy court de novo. *In re MarkAir, Inc.,* 308 F.3d at 1059. "We independently review the bankruptcy court's decision and do not give deference to the district court's determinations." *Preblich v. Battley,* 181 F.3d 1048, 1051 (9th Cir.1999) (internal quotation marks and citation omitted). We review de novo questions of statutory interpretation. *Sea–Land Serv., Inc. v. Lozen Int'l,* 285 F.3d 808, 813 (9th Cir.2002).

## DISCUSSION

■■■ An educational loan is dischargeable in bankruptcy if "excepting such debt from discharge ... will impose an undue hardship on the debtor and the debtor's dependents." 11 U.S.C. § 523(a)(8); *Rifino v. United States (In re Rifino),* 245

F.3d 1083, 1087 (9th Cir.2001). To determine if excepting student debt from discharge will impose an undue hardship, we apply the three-part test first enunciated by the Second Circuit in *Brunner v. New York State Higher Education Services Corp. (In re Brunner)*, 831 F.2d 395, 396 (2d Cir.1987). *United Student Aid Funds, Inc. v. Pena (In re Pena)*, 155 F.3d 1108, 1112 (9th Cir.1998). Under the *Brunner* test, the debtor must prove: (1) that she cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans. *Id.* at 1111; *In re Brunner*, 831 F.2d at 396.

The bankruptcy court concluded that Saxman had satisfied the *Brunner* factors. On appeal to the district court, ECMC raised the single contention that the bankruptcy court had erred in finding that Saxman could not maintain a minimal standard of living if made to repay the ECMC loan. The district court never reached this question. Instead, the court, citing our intervening decision in *Myrvang*, 232 F.3d 1116, remanded the matter to the bankruptcy court with instructions to determine how much of the ECMC loan would create an undue hardship. On appeal to this court, ECMC argues, first, that the district court erred in remanding with instructions to partially discharge Saxman's loans before determining whether the bankruptcy court had erred in its undue hardship analysis and, second, that the bankruptcy court had the authority under 11 U.S.C. § 105(a) to partially discharge Saxman's debt. Because we conclude that the bankruptcy court had the authority to partially discharge Saxman's debt, we need not reach the question of whether the dis-

trict court erred in not discussing the bankruptcy court's application of the *Brunner* factors before remanding.

■■■■■ We have not yet addressed whether partial discharge of student debt is consistent with § 523(a)(8). In *Myrvang*, we analogized to § 523(a)(8) in holding that partial discharge was consistent with the marital support obligations found in 11 U.S.C. § 523(a)(15). 232 F.3d at 1124. In reasoning that the bankruptcy court could exercise discretion in discharging some, but not all, of the disputed debt, we rejected the interpretation of § 523(a)(8) set forth in *Taylor*, 223 B.R. 747, and instead relied on the Sixth Circuit's analysis in *Tennessee Student Assistance Corp. v. Hornsby (In re Hornsby)*, 144 F.3d 433 (6th Cir.1998). *Id.* at 1123–24. We continue to find *Hornsby* to be the better reasoned opinion, and conclude that bankruptcy courts may exercise their equitable authority under 11 U.S.C. § 105(a) to partially discharge student loans.

In *Taylor*, the BAP held that § 523(a)(8) unambiguously mandated an "all-or-nothing" approach to the dischargeability of student debt. 223 B.R. at 753. The panel reasoned that, because Congress omitted the phrase "to the extent that" from § 523(a)(8), the words "such debt" should be interpreted as evincing a congressional intent that student debt either be completely discharged or not at all. *Id.* We disagree. Even assuming *arguendo* that the phrase "such debt" refers to the debtor's entire debt burden, it does not follow that the express terms of § 523(a)(8) mandate an all-or-nothing discharge. Rather, once the debtor has satisfied the *Brunner* factors and the court has concluded that the debt is too great for the debtor to shoulder, § 523(a)(8) is silent with respect to whether the bankruptcy court may partially discharge the loan. Although § 523(a)(8) is the sole mechanism by which

debtors may seek discharge of student debt, it is not the only provision bearing on the dischargeability of student loans.

Following *Myrvang*, it is now generally recognized that an all-or-nothing approach to the dischargeability of student debt contravenes Congress' intent in granting bankruptcy courts equitable authority to enforce the provisions of the Bankruptcy Code.[1] Under 11 U.S.C. § 105(a), bankruptcy courts may "issue any order, process or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. In *Hornsby*, the Sixth Circuit held that § 105(a) authorizes bankruptcy courts to enter partial discharges in student loan cases. The court reasoned that "where undue hardship does not exist, but where facts and circumstances require intervention in the financial burden on the debtor, an all-or-nothing treatment thwarts the purpose of the Bankruptcy Act." 144 F.3d at 439. In *Myrvang*, we agreed with the Sixth Circuit's reasoning, stating that "[i]ts analysis applies with equal force to dischargeability proceedings under § 523(a)(15)." 232 F.3d at 1123–24. We held that it would contravene the bankruptcy court's equitable authority to construe the words "such debt" as precluding bankruptcy courts from ordering partial discharges in appropriate cases. *Id.* Our interpretation of § 523(a)(15) is equally applicable to § 523(a)(8) because it derives directly from authority interpreting § 523(a)(8).

In *Hornsby*, the Sixth Circuit held that even if a debtor fails to establish his or her burden under § 523(a)(8) of showing undue hardship, bankruptcy courts can still partially discharge educational loans pursuant to § 105(a). 144 F.3d at 439.

Despite our general agreement with *Hornsby*, we respectfully disagree with that aspect of the court's holding that partial discharge is sometimes warranted even if the substantive requirements for an undue hardship discharge have not been demonstrated. *Id.* at 440 (holding that bankruptcy courts may partially discharge student debt absent undue hardship where debtor establishes "oppressive financial circumstances"). The problem with permitting partial discharge without first finding that the *Brunner* test has been satisfied is that the equitably-based principle of partial discharge would then have the very real potential to eviscerate the statutorily-based undue hardship provision. *See In re East,* 270 B.R. at 493 ("*Hornsby* seems to swallow whole the statutory exception to discharge mandated by Congress in the case of student loans."). Section 523(a)(8) expressly states that a loan is dischargeable in bankruptcy only if the debtor proves that the loan imposes an undue hardship. A debtor who wishes to obtain a discharge of his student loans must therefore meet the requirements of § 523(a)(8) as to the portion of the debt to be discharged before that portion of his or her debt can be discharged. *See In re Rifino,* 245 F.3d at 1087.

Whereas § 105(a) grants bankruptcy courts the equitable power to issue any order "that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code, "a court may exercise its equitable power only as a means to fulfill some specific Code provision." *In re Fesco Plastics Corp.,* 996 F.2d 152, 154 (7th Cir. 1993); *see also Norwest Bank Worthington v. Ahlers,* 485 U.S. 197, 206, 108 S.Ct.

---

1. *See Sequeira v. Sallie Mae Servicing Corp. (In re Sequeira),* 278 B.R. 861, 863–64 (Bankr. D.Or.2001); *East v. Educ. Credit Mgmt. Corp. (In re East),* 270 B.R. 485, 493 (Bankr. E.D.Cal.2001); *Yapuncich v. Mont. Guaran-* teed *Student Loan Program (In re Yapuncich),* 266 B.R. 882, 893–94 (Bankr.D.Mont.2001); *England v. United States (In re England),* 264 B.R. 38, 50–51 (Bankr.D.Idaho 2001).

963, 99 L.Ed.2d 169 (1988) ("[W]hatever equitable powers remain in the bankruptcy court must and can only be exercised within the confines of the Bankruptcy Code."). Unless the court first ensures itself that the debtor has met the requirements under § 523(a)(8), the court's discretionary use of its equitable authority amounts to an impermissible "roving commission to do equity." *United States v. Sutton,* 786 F.2d 1305, 1308 (5th Cir.1986). We therefore conclude that before the bankruptcy court can partially discharge student debt pursuant to § 105(a), it must first find that the portion being discharged satisfies the requirements under § 523(a)(8).

## CONCLUSION

We hold that a bankruptcy court may exercise its equitable authority to partially discharge student debt under the Bankruptcy Code. The bankruptcy court indicated that, but for *Taylor,* it would have partially discharged only some portion of Saxman's debt to ECMC, rather than the entire amount. The district court, relying on our intervening decision in *Myrvang,* remanded the matter to the bankruptcy court "for further proceedings consistent with the Ninth Circuit's reasoning [in *Myrvang* ]." It instructed the bankruptcy court "to determine how much of the ECMC loan would create an undue hardship. Only the portion that results in undue hardship should be discharged." The judgment of the district court remanding the matter to the bankruptcy court is

**AFFIRMED.**

WALLACE, Senior Circuit Judge, dissenting:

While I appreciate the majority's analysis, I must respectfully dissent from its decision to assume jurisdiction over this interlocutory appeal. The appeal should be dismissed.

The majority cannot be faulted for following circuit cases regarding appellate jurisdiction in this case. Some of our court's interpretations of 28 U.S.C. § 158(d) justifies a "pragmatic approach to finality" which allows many interlocutory orders to slip through the gates to appellate review. Despite the plain language of section 158(d), which allows us jurisdiction to hear appeals "from all *final* decisions, judgments, orders, and decrees" entered by a district court sitting as an appellate tribunal in bankruptcy, we have interpreted these words more than expansively to include interlocutory, non-final remand orders like that at issue in this case. *N. Slope Borough v. Barstow (In re MarkAir, Inc.),* 308 F.3d 1057, 1060 (9th Cir.2002); *DeMarah v. United States (In re DeMarah),* 62 F.3d 1248, 1250 (9th Cir.1995); *Bonner Mall P'ship v. U.S. Bancorp Mortgage Co. (In re Bonner Mall P'Ship),* 2 F.3d 899, 903–04 (9th Cir.1993); *Vylene Enters. v. Naugles, Inc.,* 968 F.2d 887, 894–95 (9th Cir.1992); *Zolg v. Kelly (In re Kelly),* 841 F.2d 908, 911 (9th Cir.1988); *King v. Stanton (In re Stanton),* 766 F.2d 1283, 1285–86 (9th Cir.1985); *Dental Capital Leasing Corp. v. Martinez (In re Martinez),* 721 F.2d 262, 265 (9th Cir.1983).

My view is that we should not accept jurisdiction in this appeal because the Supreme Court made it clear eleven years ago in *Conn. Nat'l Bank v. Germain,* 503 U.S. 249, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992) that jurisdiction over appeals of non-final orders in bankruptcy cases is governed by 28 U.S.C. § 1292, pursuant to which we, in our discretion, may assume jurisdiction after the district court has certified to this court "a controlling question of law as to which there is substantial ground for difference of opinion." *Germain* reviewed the Second Circuit's decision that section 158(d) effectively limited the scope of section 1292 so that an appellate court has jurisdiction only over final

orders issued by a district court sitting as a bankruptcy appeals court; in order to hear an interlocutory appeal from the district court in such a case, the order at issue must have been entered by the district court after it had withdrawn the case from bankruptcy under 28 U.S.C. § 157(d). *Germain v. Conn. Nat'l Bank,* 926 F.2d 191, 196 (2d Cir.1991).

The Supreme Court in *Germain* explained that although sections 158(d) (jurisdiction over final decisions of district courts sitting as courts of appeal in bankruptcy) and 1291 (jurisdiction over appeals from final decisions of the district courts) appear to operate independently, "the statutes do not pose an either-or proposition." 503 U.S. at 253, 112 S.Ct. 1146. Rather, "[s]ections 1291 and 158(d) [ ] overlap ... but each section confers jurisdiction over cases that the other section does not reach." *Id.* Likewise, section 158(d) does not "preclud[e] jurisdiction under § 1292." *Id.* In discussing the relationship of sections 158(d) and 1292, the Court stated:

> [T]he judicial inquiry into the applicability of § 1292 begins and ends with what § 1292 does say and with what § 158(d) does not. Section 1292 provides for review in the courts of appeals, in certain circumstances, of "interlocutory orders of the district courts of the United States." Section 158(d) is silent as to review of interlocutory orders.... So long as a party to a proceeding or case in bankruptcy meets the conditions imposed by § 1292, a court of appeals may rely on that statute as a basis for jurisdiction.

*Id.* at 254, 112 S.Ct. 1146. The Supreme Court's explanation is quite simple: section 158(d) concerns only final orders, so when dealing with an appeal of an interlocutory order in bankruptcy, courts of appeals must look to section 1292, as they do in any other civil case in which there is an appeal of an interlocutory order. This log-ic has not been lost on our sister circuits. *AroChem Corp. v. Coan (In re AroChem),* 176 F.3d 610, 618 (2d Cir.1999); *The Wallace & Gale Co. v. Aetna Cas. & Sur. Co. (In re Wallace & Gale Co.),* 72 F.3d 21, 24 (4th Cir.1995); *Orix Credit Alliance v. Delta Res. Inc. (In re Delta Res. Inc.),* 54 F.3d 722, 727 n. 4 (11th Cir.1995); *Plan Comm. v. Clark (In re Bank Bldg. & Equip. Corp. of Am.),* 23 F.3d 1390, 1392 n. 5 (8th Cir.1994); *Conroe Office Bldg., Ltd. v. Nichols (Matter of Nichols),* 21 F.3d 690, 692–93 (5th Cir.1994); *Matter of Stoecker,* 5 F.3d 1022, 1026 (7th Cir.1993); *Lopez v. Casal (In re Casal),* 998 F.2d 28, 31 (1st Cir.1993); *Balcor Pension Investors v. Wiston XXIV P'Ship (In re Wiston XXIV P'Ship),* 988 F.2d 1012, 1012–13 (10th Cir.1993).

Once *Germain* became final, we had no choice but to follow it. Its analysis is clear: our Circuit had been wrong on our jurisdictional analysis. But instead of analyzing *Germain* and conforming to its clear teaching, we merely stated without any analysis that "nothing in *Germain* casts doubt upon the liberal standard for finality we have adopted regarding § 158(d)." *Bonner Mall,* 2 F.3d at 904 n. 11. Rather than recognize that by its plain language, 28 U.S.C § 1292 governs appellate jurisdiction of the courts of appeals over interlocutory orders (such as remand orders), our court chose, via our unsupported statement in *Bonner Mall,* to cling to the extremely liberal standard of finality we had earlier applied to bankruptcy cases. Instead of calling this case "interlocutory," as it is, this court's precedent instructs us to call it "final" and exercise jurisdiction over this appeal. I cannot agree that an order of the district court remanding to the bankruptcy court for further fact-finding in conjunction with a determination of how much of Saxman's $90,000 student loan debt causes him hardship is a final order. Contrary to what the majority

says, there is more left for the bankruptcy court to do in this case than merely ministerial computations. On remand, the bankruptcy court must contend with both Saxman's and ECMC's differing characterizations of how much "disposable" income Saxman should have each month, which in turn affects how much of his loan causes him hardship. This is a factual inquiry involving issues of financial independence and quality of life, not a simple set of mathematical calculations. Clearly, this does not give us jurisdiction even under our own wrongly decided cases, let alone binding Supreme Court precedent.

Apparently, other circuits would agree with my characterization of the remand. In a majority of the circuits,

> a decision by the district court on appeal remanding the bankruptcy court's decision for further proceedings in the bankruptcy court is not final, and so is not appealable to this court unless the further proceedings contemplated are of a purely ministerial character, such as calculating prejudgment interest when the amount of the judgment, the interest rate, and the period over which the interest is to be calculated are all uncontested.

*Matter of Lopez*, 116 F.3d 1191, 1192 (7th Cir.1997); *accord In re Rex Montis Silver Co.*, 87 F.3d 435, 438 (10th Cir.1996); *Jove Eng'g, Inc. v. I.R.S.*, 92 F.3d 1539, 1548 (11th Cir.1996); *In re Prudential Lines, Inc.*, 59 F.3d 327, 331–32 (2d Cir.1995); *In re Broken Bow Ranch, Inc.*, 33 F.3d 1005, 1008 (8th Cir.1994); *In re Harrington*, 992 F.2d 3, 6 (1st Cir.1993); *In re St. Charles Pres. Investors, Ltd.*, 916 F.2d 727, 729 (D.C.Cir.1990) (per curiam); *United States, Dep't of Air Force v. Carolina Parachute Corp.*, 907 F.2d 1469, 1472 n. 3 (4th Cir.1990). Determining how much of his loan Saxman can repay without causing him an undue hardship is not, in my view, analogous to the ministerial task of calculating interest when all of the variables are known.

This of course makes it all the more ironic that the majority chose to cite *In re Fox*, 762 F.2d 54, 55 (7th Cir.1985) when calling the bankruptcy court's remaining tasks in this case "ministerial," since the Seventh Circuit, and the seven other circuits cited above, have openly rejected the Ninth Circuit's approach to the finality of remand orders in bankruptcy cases. *Matter of Lopez*, 116 F.3d at 1194 (calling the Ninth Circuit's approach "*terribly* wooly" and stating that the word "final" in section 158(d), "cannot be thought, in light of the tradition of bankruptcy cases, a term of art meaning 'final or nonfinal' ").

Nor am I the first in the Ninth Circuit to recognize that *Germain* casts grave doubts on our liberal standard for finality under section 158(d). For example, in *Vylene*, we acknowledged that the then recently decided Supreme Court *Germain* opinion challenged "[e]xisting Ninth Circuit precedent [that] holds ... that the finality standards [under sections 158(d) and 1291] differ." 968 F.2d at 891. This is because, as we accepted in *Vylene*, "The Supreme Court has stated that §§ 158(d) and 1291 afford the same jurisdiction with respect to final orders of a district court sitting in its bankruptcy appellate capacity. To afford the same jurisdiction, both statutes would have to have the same finality standards in bankruptcy proceedings." *Id.* at 892 (citing *Germain*, 503 U.S. at 253, 112 S.Ct. 1146) (internal citation omitted).

*Vylene* left for another panel the resolution of the conflict between *Germain* and this circuit's interpretation of finality in the bankruptcy context. *Id.* at 891. The conflict was properly acknowledged again in *Stanley v. Crossland, Crossland, Chambers, MacArthur & Lastreto (In re Lakeshore Village Resort, Ltd.)*, 81 F.3d 103, 105–06 (9th Cir.1996). There, we observed

that *"Germain* cast some doubt on our holdings that section 158(d) provides broader appellate jurisdiction in bankruptcy proceedings than that provided by section 1291 in other civil litigation," but we did not resolve the conflict because the district court's decision was not final under either standard.

These cases make it clear that *Bonner Mall's* assertion that "nothing in *Germain* casts doubt upon the liberal standard for finality we have adopted regarding § 158(d)" cannot be sustained. 2 F.3d at 904 n. 11. *Vylene* and *Stanley*, decided before *Bonner Mall*, both acknowledge the conflict. Not only did the Supreme Court in *Germain* hold that section 1292, rather than section 158(d), governs appellate jurisdiction over interlocutory orders (like the remand in this case), it also made it clear that this circuit's section 158(d) finality jurisprudence must be reconciled with section 1291. This should be obvious from the circuit split, where we largely stand alone against the majority of our sister circuits.

I think it is undeniable that our responsibility is to follow the Supreme Court rather than our tortured attempt to circumvent a clear jurisdictional rule. I would follow *Germain* and dismiss the appeal. Because this case does not present a final decision even under our misguided precedents, I dissent.