**EDUCATIONAL CREDIT MANAGEMENT CORPORATION, Appellant,**

v.

**Christopher James POPE, Appellee.**

**In re Christopher James Pope, Debtor.**

No. C 03–03354 CW.
Bankruptcy No. 00–45102–J7.
Adversary Nos. 01–4398 AJ, 01–4399 AJ, 01–4402 AJ, 01–4403 AJ.

United States District Court, N.D. California.

March 4, 2004.

Miriam Hiser, Law Offices of Miriam Hiser, San Francisco, CA, for Educational Credit Management Corporation, Appellant.

David A. Smyth, Smyth Law Offices, Walnut Creek, CA, for Christopher James Pope, Appellee.

## ORDER REVERSING BANKRUPTCY COURT'S JUDGMENT

WILKEN, District Judge.

Appellant Educational Credit Management Corporation appeals the judgment of the United States Bankruptcy Court for the Northern District of California, in adversary proceeding Nos. 01–4398 AJ, 01–4399 AJ, 01–4402 AJ, and 01–4403 AJ, in bankruptcy case No. 00–45102–J7, partially discharging Appellee Christopher James Pope's ten educational loans by forgiving his obligation to pay additional interest on the loans. The question presented is whether the bankruptcy court erred by partially discharging Appellee's loans even though it found that Appellee had not met the second and third prongs of the undue hardship test for a discharge. The Court REVERSES the judgment of the bankruptcy court.

## BACKGROUND

In 1993, Appellee received a Ph.D. in chemical engineering from Massachusetts Institute of Technology. Appellee financed his graduate school education with the loans at issue in this action. After graduation, Appellee worked as a post-doctoral fellow in the field of chemical engineering. Appellee's research, publications, and lectures on pollution chemistry earned him critical praise. In 1999, Appellee began a job at Sandia Corporation in Livermore, California.

On September 5, 2000, Appellee filed a voluntary Chapter 7 bankruptcy petition. This case was closed. Appellee thereafter left Sandia Corporation in March, 2001, at which time his yearly salary was $61,500. On November 20, 2001, Appellee reopened the bankruptcy case so that he could seek the discharge of the loans at issue. On December 13, 2001, Appellee filed four separate adversary proceedings seeking to discharge his educational loans. The bankruptcy court consolidated the four adversary proceedings; Appellant was the sole defendant.

Appellee continued to seek professional employment after he reopened his bankruptcy petition. In February, 2003, Appellee applied unsuccessfully for a teaching position at Chabot Community College. In March, 2003, Appellee attended a professional gathering in Chicago to network and assess future employment opportunities.

The bankruptcy court tried the adversary proceeding on June 4, 2003, at which time Appellee's educational loans amounted to $72,724. There was no evidence that Appellee had ever made payments on his loans nor that he had requested an extension of time to make payments or relief under the Ford Program.[1]

---

1. The William D. Ford Federal Direct Loan Program allows borrowers to consolidate educational loans for repayment. There are four types of plans offered: standard repayment

At the time of trial, Appellee was forty-two years old and single. He lived in semi-squalor and supported himself by delivering pizzas part-time and with Social Security Disability Income payments from the United States Social Security Administration. He was living a frugal lifestyle on minimal income. The bankruptcy court found that Appellee suffered from physical and psychiatric problems. Appellee testified that he suffered from Lyme disease, but the bankruptcy court found the evidence inconclusive as to whether Appellee does have Lyme disease.

On June 5, 2003, after trial but before issuing its opinion, the bankruptcy court wrote a letter to the parties stating that it had tentatively found that Appellee had not carried his burden of proving undue hardship under *United Student Aid Funds, Inc. v. Pena (In re Pena)*, 155 F.3d 1108 (9th Cir.1998), but questioned the parties on the possibility of a partial discharge under *Saxman v. Educational Credit Management Corp. (In re Saxman)*, 325 F.3d 1168 (9th Cir.2003). The bankruptcy court asked the parties to assume that Appellee would not make payments on the loans for two years but would then obtain employment from which he would earn $45,000 to $50,000 per year. The bankruptcy court asked the parties how much principal Appellee could repay over the next ten to fifteen years assuming interest stopped accruing. Appellee responded that he could repay $27,000 of his loans within twelve years without undue hardship, proposing payments of $150 per month from June, 2005, to May, 2010, and $300 per month from June, 2010, to May, 2015. Appellant responded that, under the Ford Income Contingency Repayment

Plan, Appellee's monthly payments would be $490 per month with an income of $50,000 per year. Appellant suggested that Appellee could pay $500 per month with an income of $50,000 per year without the Ford Program and pay off his full debt in fifteen years. Appellant also pointed out that, under *Saxman*, the bankruptcy court could not grant a partial discharge without proof of undue hardship from repayment of the entire debt.

On July 1, 2003, the bankruptcy court issued its decision and on July 7, 2003, it entered a final judgment granting Appellee a partial discharge under 11 U.S.C. § 523(a)(8) of his educational loans. The bankruptcy court applied the three-pronged *Pena* test for undue hardship and found that Appellee met the first prong but failed to meet the second and third prongs necessary for a full discharge. Addressing the partial discharge, the bankruptcy court considered Appellee's psychiatric problems and poor employment history and assumed that Appellee could earn a yearly income of $46,000, which was seventy-five percent of his past salary. The bankruptcy court concluded that the $490 per month payments required under the Ford Income Contingency Repayment Program were excessive and would not allow Appellee to maintain a minimal standard of living at his seventy-five percent earning capacity. The bankruptcy court estimated that payments of $400 per month for fifteen years, without additional interest, would allow Appellee to pay off the loan principal by the time he was sixty years old. The bankruptcy court accordingly granted a partial discharge, forgiving the additional interest

plan, extended repayment plan, graduated repayment plan, and income contingent repayment plan. 34 C.F.R. § 685.208. Under the income contingent repayment plan, a borrower makes payments based on his or her total

amount of loans, family size, and adjusted gross income until the loan is repaid in full or until the loan has been in repayment through the end of the income contingent repayment period. 34 C.F.R. § 685.208(f).

accruing beyond the $72,724 owed on the educational loans.

## JURISDICTION AND STANDARD OF REVIEW

 A district court has jurisdiction to hear appeals from a bankruptcy court pursuant to 28 U.S.C. § 158(a). The district court reviews the bankruptcy court's findings of fact according to a "clearly erroneous" standard, Federal Rule of Bankruptcy Procedure 8013, and reviews conclusions of law *de novo, O'Malley Lumber Co. (In re Lockard)*, 884 F.2d 1171, 1174 (9th Cir.1989). The district court reviews *de novo* the bankruptcy court's application of the legal standard in determining whether a student loan debt is dischargeable as an undue hardship. *Rifino v. United States (In re Rifino)*, 245 F.3d 1083, 1087 (9th Cir.2001) (citing *United Student Aid Funds, Inc. v. Taylor (In re Taylor)*, 223 B.R. 747, 750 (9th Cir. BAP 1998)).

## DISCUSSION

Neither party disputes the facts found by the bankruptcy court. Accordingly, this Court reviews *de novo* the law governing the dischargeability of a student loan debt and the application of that standard to the undisputed facts as found by the bankruptcy court.

Section 523(a) of the Bankruptcy Code provides:

(a) A discharge under § 727 ... does not discharge an individual debtor from any debt—...

(8) for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless

excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents; ....

11 U.S.C. § 523(a)(8).

 In *Pena*, the Ninth Circuit adopted a three-part undue hardship test established by the Second Circuit in *Brunner v. New York State Higher Education Services Corp. Pena*, 155 F.3d at 1110 (citing *Brunner*, 831 F.2d 395, 396 (2d Cir.1987)). Under this test, to obtain a discharge of a student loan, the debtor must prove: (1) that the debtor cannot maintain, based on current income and expenses, a minimal standard of living if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the loans; and (3) that the debtor has made good faith efforts to repay the loans. *Pena*, 155 F.3d at 1111 (citing *Brunner*, 831 F.2d at 396). The debtor has the burden of proving all three elements before a discharge can be granted. *Rifino*, 245 F.3d at 1088–89 (citing *Pa. Higher Educ. Assistance Agency v. Faish (In re Faish)*, 72 F.3d 298, 306 (3d Cir.1995)). Bankruptcy courts must consider each element in turn and, where one of the three elements is not met, the court must stop there with a finding of no dischargeability. *Rifino*, 245 F.3d at 1089 (citing *Faish*, 72 F.3d at 306).

Subsequently, in *Saxman*, the Ninth Circuit considered whether an educational loan may be partially discharged consistent with § 523(a)(8) of the Bankruptcy Code. 325 F.3d at 1170. Saxman had filed a Chapter 7 bankruptcy petition and sought to discharge his student loans based on evidence of undue hardship. *Id.* at 1170–71. The bankruptcy court concluded that Saxman met the three-pronged test for undue hardship and fully dis-

charged Saxman's debt, rejecting the creditor's argument that it could instead grant just a partial discharge. *Id.* at 1171. On appeal, the district court vacated the bankruptcy court's discharge order and remanded the case for consideration of a partial discharge in light of the Ninth Circuit's decision in *Graves v. Myrvang (In re Myrvang)*, 232 F.3d 1116 (9th Cir.2000). *Saxman v. U.S. Dep't of Educ. (In re Saxman)*, 263 B.R. 342, 345 (W.D.Wash. 2001). The district court instructed the bankruptcy court to abandon its all-or-nothing approach and to calculate the portion of the loan that Saxman could pay without causing him an undue hardship. *Id.*

The Ninth Circuit affirmed the district court, holding that "bankruptcy courts may exercise their equitable authority under 11 U.S.C. § 105(a)[2] to partially discharge student loans." *Saxman*, 325 F.3d at 1173. In reaching this conclusion, the Ninth Circuit relied on the Sixth Circuit's reasoning in *Tennessee Student Assistance Corp. v. Hornsby (In re Hornsby)*, 144 F.3d 433 (6th Cir.1998), but rejected the Sixth Circuit's position "that partial discharge is sometimes warranted even if the substantive requirements for an undue hardship discharge have not been demonstrated," because it would have the "very real potential to eviscerate the statutorily-based undue hardship provision." *Id.* The Ninth Circuit held that debtors must prove that repayment of the loan would impose an undue hardship before a bankruptcy court may grant a partial discharge. 325 F.3d at 1174. The Ninth Circuit invoked the equitable powers of the bankruptcy court for the benefit of the creditor, not the debtor, directing the bankruptcy courts to consider whether or not the debtor could pay a portion of the debt without causing undue hardship.

A month before the Ninth Circuit's decision in *Saxman*, the Ninth Circuit Bankruptcy Appellate Panel (BAP) had addressed the issue of partially discharging educational debt under § 523(a)(8) in *Educational Credit Management Corp. v. Blair (In re Blair)*, 291 B.R. 514 (9th Cir. BAP 2003). In *Blair*, the bankruptcy court had found that the debtor had failed to establish undue hardship but nevertheless, relying on its equitable powers under § 105(a) and the Ninth Circuit's decision in *Myrvang*, discharged half of the debtor's student loans. *Id.* at 516. On appeal, citing the district court's reasoning for remanding *Saxman*, the BAP held that the bankruptcy court erred by granting a partial discharge and that a "preliminary finding of 'undue hardship' is necessary before a bankruptcy court can exercise its equitable powers in granting a partial discharge of student loan debts." *Id.* at 519–20 (citations omitted). The BAP concluded that the "bankruptcy court explicitly found that Debtor had not established undue hardship. It should have stopped there. The bankruptcy court erred by thereafter granting a partial discharge of the Debts." *Id.* at 520.

After *Saxman*, all but one of the bankruptcy courts that have considered a partial discharge have done so only after first finding that the debtor met the three *Pena* requirements for discharge. *See, e.g., Cota v. U.S. Dep't of Educ. (In re Cota)*, 298 B.R. 408, 422–23 (Bankr.D.Ariz.2003) (finding all three prongs of undue hardship test met, granting full discharge, and de-

---

**2.** Section 105(a) provides:

The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

clining to grant only partial discharge); *Adler v. Educ. Credit Mgmt. Corp. (In re Adler)*, 300 B.R. 740, 752 (Bankr.N.D.Cal. 2003) (fully discharging school loans only after finding undue hardship and concluding that no partial payments were required); *Marks v. Educ. Credit Mgmt. Corp. (In re Marks)*, 301 B.R. 563, 565 (Bankr.N.D.Cal.2003) (considering partial discharge only after finding undue hardship); *Williams v. Educ. Credit Mgmt. Corp. (In re Williams)*, 301 B.R. 62, 79 (Bankr.N.D.Cal.2003) (finding all three undue hardship prongs met and concluding that debtors could not pay any portion of loans). The only exception is *Mason v. Help Servs. Group, Inc. (In re Mason)*, 303 B.R. 459, 470 (Bankr.D.Idaho 2004), which this Court does not find persuasive.

In this appeal, Appellant argues that the bankruptcy court erred in granting a partial discharge under 11 U.S.C. § 523(a)(8) after finding that Appellee did not prove undue hardship. This Court agrees based on *Saxman*, which requires that a debtor must prove that the repayment of the entire loan would impose an undue hardship before a bankruptcy court may grant even a partial discharge. 325 F.3d at 1174.

Neither party disputes the conclusions of the bankruptcy court regarding the three *Pena* undue hardship prongs. Regarding the first *Pena* prong, Appellant conceded at trial that Appellee had no available income from which to make loan payments, and the bankruptcy court concluded that Appellee met the first prong. Appellee did not cross-appeal the bank-

ruptcy court's conclusions regarding the second and third prongs. The Court accordingly has no reason to review these conclusions.[3]

Thus, the bankruptcy court erred in granting a partial discharge after finding that Appellee had not presented sufficient evidence to prove undue hardship under the second and third *Pena* prongs.

CONCLUSION

For the foregoing reasons, the judgment of the bankruptcy court granting a partial discharge is REVERSED. The debt is not discharged. The case is remanded to the bankruptcy court to enter judgment in accordance with this order.

IT IS SO ORDERED.

**3.** If Appellee had cross-appealed the bankruptcy court's second– and third-prong conclusions, the Court would affirm. Although Appellee had psychiatric problems at the time of trial, he was also highly educated and actively seeking professional employment. Based on these facts, the bankruptcy court was not incorrect in finding that Appellee's circumstances were not likely to persist. The bankruptcy court concluded that Appellee did not demonstrate good faith efforts to repay the loans because he had been away from his profession for a relatively short period in relation to the repayment period and he had not requested any extensions of loan payments or relief under the Ford Program. This finding was not clearly erroneous.