Robert WALTHALL; Dorothy Walthall; Jerry T. Dennis, Plaintiffs,

and

David Raihl; June Raihl, Plaintiffs–Appellants,

v.

UNITED STATES of America, Defendant–Appellee.

John CAMACHO; Barbara Camacho, Plaintiffs–Appellants,

and

Robert Walthall; Dorothy Walthall; Jerry T. Dennis, Plaintiffs,

v.

UNITED STATES of America, Defendant–Appellee.

Robert WALTHALL; Dorothy Walthall, Plaintiffs–Appellants,

v.

UNITED STATES of America, Defendant–Appellee.

Nos. 96–35237, 96–35271 and 96–35830.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 15, 1997.

Decided Nov. 19, 1997.

Erik LeRoy, Anchorage, AK, for plaintiffs-appellants Raihls.

George R. Lyle, Guess & Rudd, Anchorage, AK, for plaintiffs-appellants Camachos.

Charles F. Schuetze, Davis & Davis, John L. Hoffer, Jr., Anchorage, AK, for plaintiffs-appellants Walthalls.

Pamela C. Berry, Tax Division, United States Department of Justice, Washington, DC, for defendant-appellee.

Before: WALLACE, JOHN T. NOONAN, Jr., and THOMPSON, Circuit Judges.

Opinion by Judge WALLACE; Partial Concurrence and Partial Dissent by Judge NOONAN.

WALLACE, Circuit Judge:

In these consolidated appeals, we consider whether the Tax Equity and Fiscal Responsibility Act of 1982 (Act) provides constitutionally adequate notice to indirect partners of multi-tiered partnerships, and if so, whether the Internal Revenue Service (IRS) complied with the requirements of the statute.

I

In 1983, the Walthalls, Camachos, and Raihls invested in a tax shelter partnership known as the Sente Investment Club Partnership (Club). The Club invested in two other partnerships. These other partnerships were thus "top-tier partnerships," and the Club was a "pass-thru partnership." Under this structure, the Walthalls, Camachos, and Raihls were all indirect partners of the top-tier partnerships. When the top-tier partnerships reported ordinary losses in 1983 and 1984, the Club claimed its proportion of those losses, which were passed through the Club to its partners, including the Walthalls, Camachos, and Raihls.

The IRS audited the 1983 and 1984 tax returns of the two top-tier partnerships. Pursuant to the Act, the IRS must "give partners notice of beginning and completion of administrative proceedings." 26 U.S.C. § 6223(a). In accordance with the Act, the IRS sent notice of the audits of the top-tier partnerships to all partners listed on the partnership returns, including the Club. *See* 26 U.S.C. § 6223(c)(1). The Walthalls, Camachos, and Raihls were not listed on any returns of the top-tier partnerships, so they were not sent notices.

The audit resulted in adjustments to the returns of the partnerships in which the Club had invested. The Club contested the adjustments for one of the top-tier partnerships, but the petition for readjustment was dismissed for lack of prosecution. The Club did not petition for readjustment of the other adjustment. *See Sente Investment Club Partnership v. C.I.R.*, 95 T.C. 243, 246, 1990 WL 129305 (1990) (*Sente*). The IRS subsequently adjusted the tax returns of the Club's partners, including the Walthalls, Camachos, and Raihls.

The Walthalls also invested in another tax shelter partnership, the Sierra Investment Club Partnership (Sierra). Sierra was also a pass-thru partnership that invested in a top-tier partnership. As with the top-tier partnerships in which the Club invested, this top-tier partnership incurred ordinary losses, which were claimed in turn by Sierra and passed through to the Walthalls. The IRS audited the top-tier partnership's returns for 1984–86, and, as before, sent notice to partners listed on the tax return. The Walthalls, who were not listed on the top-tier partnership return, were not sent notice, and did not contest the adjustment. In 1988, the IRS completed its audit and subsequently adjusted the Walthalls' return.

The Walthalls filed an action in the district court, seeking a refund of income taxes paid in 1980–86, asserting the adjustments were invalid, requesting injunctive relief against the government for the unpaid assessments, and asking for a declaration that the notice provisions of the Act were unconstitutional. The district court entered summary judgment in favor of the government, and the Walthalls timely appealed.

To contest their tax adjustment with respect to the Club's ordinary loss, the Camachos filed an adversary complaint against the IRS in bankruptcy court during their Chapter 11 bankruptcy proceedings. Four of the six claims pertained to the tax adjustment. The fifth claim pertained to an investment in a partnership known as Utah Bioresearch. The sixth was a claim that the IRS violated the automatic stay issued by the bankruptcy court in seizing the Camachos' Alaska Permanent Fund Dividend in November 1992, one month after the bankruptcy petition. The bankruptcy court dismissed the fifth claim on the ground that the allegations were insufficient, a ruling affirmed by the district court. With respect to the claims pertaining to the Club, the bankruptcy court found in favor of the Camachos, a ruling subsequently reversed by the district court. The district court also concluded that the Camachos were entitled to the Alaska Permanent Fund Dividend and remanded the case to the bankruptcy court for a determination of whether the Camachos should be awarded damages and attorneys' fees based on the IRS's violation of the bankruptcy stay. The Camachos' appeal from the district court's rulings was timely.

Finally, the Raihls declared Chapter 7 bankruptcy. During the bankruptcy proceedings, they filed an adversary action against the IRS. Six of the twelve claims involved adjustments to their tax returns based on their investment in the Club. The other six claims involved a second tax shelter the Raihls invested in known as the Gran Esperanza Partnership (Gran Esperanza). Gran Esperanza was another pass-thru partnership that invested in a top-tier partnership. The IRS audited the tax returns of this top-tier partnership, and as a result, adjusted Gran Esperanza's return, and eventually that of the Raihls.

The bankruptcy court ruled that the tax adjustments with respect to the Club's investments were invalid because the Raihls were not given notice of the proceedings, but the adjustments with respect to Gran Esperanza were valid, because they occurred after the IRS issued regulations setting forth the steps that indirect partners had to take to ensure that they would receive notice. The district court reversed the bankruptcy court with respect to the Club. The Raihls filed a timely appeal.

## II

■ We must first address our subject-matter jurisdiction over these appeals. The district court, sitting in an appellate capacity, had jurisdiction to review the bankruptcy court's decisions with respect to the Camachos and the Raihls pursuant to 28 U.S.C. § 158(a). We have jurisdiction over appeals from the district court's final judgments pursuant to 28 U.S.C. § 158(d). The district court had original jurisdiction over the Walthalls' case pursuant to 28 U.S.C. §§ 1340, 1345. We have jurisdiction over final orders by the district court pursuant to 28 U.S.C. § 1291.

■ A district court order that affirms or reverses a bankruptcy court order is final. *In re Stanton*, 766 F.2d 1283, 1287 (9th Cir. 1985) (*Stanton*). However, finality determi-

nation in the bankruptcy context has its own set of rules. We examine whether we should consider the district court's decision final in a bankruptcy case by considering "(1) the need to avoid piecemeal litigation; (2) judicial efficiency; (3) the systemic interest in preserving the bankruptcy court's role as the finder of fact; and (4) whether delaying review would cause either party irreparable harm." *In re Lakeshore Village Resort, Ltd.*, 81 F.3d 103, 106 (9th Cir.1996) (*Lakeshore*), citing *In re Vylene Enterprises, Inc.*, 968 F.2d 887, 895–96 (9th Cir.1992).

### A.

The Walthalls' appeal does not involve a bankruptcy court. Rather, they filed an action in a district court, seeking refunds of taxes paid and an injunction against collection of the amounts still unpaid. The district court entered summary judgment against the Walthalls. We have jurisdiction pursuant to 28 U.S.C. § 1291.

### B.

■ The government challenges our jurisdiction to review the Camachos' appeal. Although the district court remanded their case to the bankruptcy court for further factual findings which ordinarily prevents our jurisdiction, *Stanton*, 766 F.2d at 1287, the Camachos argue that we have jurisdiction over their appeal based on two narrow exceptions described in *In re Bonner Mall Partnership*, 2 F.3d 899 (9th Cir.1993), *cert. granted and case dismissed as moot*, 513 U.S. 18, 115 S.Ct. 386, 130 L.Ed.2d 233 (1994). In *Bonner*, we held that we could assert jurisdiction, even where a case had been remanded "for factual findings on a central issue if that issue is legal in nature and its resolution either 1) could dispose of the case or proceeding and obviate the need for factfinding; or 2) would materially aid the bankruptcy court in reaching its disposition on remand." *Id.* at 904.

Neither *Bonner* exception is applicable here. The district court remanded the Camachos' case to the bankruptcy court for a factual determination of whether damages and attorneys' fees should be awarded to them based on the government's refusal to turn over the Alaska Permanent Fund Dividend to which they were entitled. *Camacho v. United States*, 190 B.R. 895, 902 (D.Alaska 1995). A favorable decision on this appeal would not obviate the need for remand, so the first exception does not apply. Nor would this appeal "materially aid the bankruptcy court," because the issue on remand is whether the government violated the automatic stay provision of 11 U.S.C. § 362(h), an issue that does not concern the notice provisions of the Act. Therefore, we dismiss the Camachos' appeal for lack of jurisdiction.

### C.

■ The government does not contend that we lack jurisdiction over the Raihls' appeal. However, "we have an independent duty to examine the propriety of our subject matter jurisdiction." *Lakeshore*, 81 F.3d at 105.

The district court reversed the bankruptcy court's determination that the Raihls were entitled to notice of the administrative proceeding. However, the district court also remanded the case to the bankruptcy court, stating that "the bankruptcy court should determine whether its jurisdiction is affected by the tax court decision in *Sente Inv. Club Partnership of Utah v. C.I.R.*, 95 T.C. 243, 1990 WL 129305 (1990)."

In *Sente*, the tax court held that tax adjustments for so-called "flow-through items" had to be determined in a unified proceeding at the partnership level, rather than in separate proceedings at the partner level. *Id.* at 247, 249. Since the case had been brought by the partner and not the partnership, the court held that it lacked jurisdiction to adjudicate tax adjustment disputes. *Id.* at 250.

This case arguably falls within the first *Bonner* exception to non-finality due to a remand. But even if it did, we would still be without jurisdiction under our threshold bankruptcy finality test. *See Lakeshore*, 81 F.3d at 106. The first and fourth parts of the test are decisive.

First, the need for determining whether *Sente* deprived the bankruptcy court of jurisdiction over the Raihls' case would be obviat-

ed only if this appeal were resolved against them. Were we to resolve it in their favor, the case would have to be remanded for the *Sente* determination. Thus, this appeal presents the potential for piecemeal litigation, as there would undoubtedly be an appeal of the bankruptcy court's resolution of the *Sente* issue. Finally, there is no showing of irreparable harm that the Raihls would suffer from further delay.

Therefore, we hold that the district court's order reversing the bankruptcy court and remanding the case to it for further proceedings was not a final order. We dismiss the Raihls' appeal for lack of jurisdiction.

### III

We still must consider the appeal of the Walthalls. They make three arguments on appeal.

### A.

■ The Walthalls first contend that the Act, as interpreted by the IRS, is unconstitutional because, by not requiring that notice be sent to indirect partners, it is not reasonably calculated to give sufficient notice to them.

We begin our discussion of the notice requirements of the Due Process Clause with *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950) (*Mullane*), in which the Court held that "[a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." The Court, however, did not prescribe rigid and inflexible requirements for notice, holding instead that " '[t]he criterion is not the possibility of conceivable injury, but the just and reasonable character of the requirements, having reference to the subject with which the statute deals.' " *Id.* at 314–15, 70 S.Ct. at 657, *quoting American Land Co. v. Zeiss*, 219 U.S. 47, 67, 31 S.Ct. 200, 207, 55 L.Ed. 82 (1911).

Thus, we must determine whether the Act is reasonably calculated, under the circumstances, to give indirect partners an opportunity to contest tax return adjustments. We turn first to the statutory scheme.

The Act requires the IRS to "mail to each partner whose name and address is furnished to the Secretary notice of (1) the beginning of an administrative proceeding at the partnership level with respect to a partnership item, and (2) the final partnership administrative adjustment resulting from any such proceeding." 26 U.S.C. § 6223(a). The Act defines the information base as consisting of "the names, addresses, and profits interests shown on the partnership return," as well as "additional information furnished to [the Secretary] by the tax matters partner or any other person in accordance with regulations prescribed by the Secretary." 26 U.S.C. § 6223(c)(1),(2). A tax matters partner is a designated direct partner. Indirect partners (such as the Walthalls) are entitled to notice if they are identified on the partnership return or are identified by the tax matters partner in accordance with the prescribed regulations. 26 U.S.C. § 6223(c)(3). The Act further requires the tax matters partner to keep all other partners informed of administrative proceedings, 26 U.S.C. § 6223(g), and requires pass-thru partners to forward notices of such proceedings. 26 U.S.C. § 6223(h). Thus, the Act contemplates that indirect partners will receive notice from specified direct partners.

The Walthalls contend that this scheme is not reasonably calculated to provide sufficient notice. However, none of the cases relied upon by the Walthalls is applicable. In *Mennonite Board of Missions v. Adams*, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983), the Court held that notice by publication and posting of an intended tax sale of property did not satisfy the requirements of the Due Process Clause, because it could not "be expected to lead to actual notice to the mortgagee." *Id.* at 799, 103 S.Ct. at 2711. Instead, the Court held that "[n]otice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of any

party, whether unlettered or well versed in commercial practice, if its name and address are reasonably ascertainable." *Id.* at 800, 103 S.Ct. at 2712. The Walthalls seize upon this case to argue that the IRS was required to send notice by mail to them.

However, *Mennonite* presented a significantly different situation from that in this case. First, the mortgagee in *Mennonite* was identified in the mortgage itself, and thus readily ascertainable. *Id.* at 798, 103 S.Ct. at 2711. In this case, however, the Walthalls were never identified on the tax return of the partnerships being audited.

Second, the notice in *Mennonite* was sent to the property owner. The Court held that this was insufficient because "[n]otice to the property owner, who is not in privity with his creditor and who has failed to take steps necessary to preserve his own property interest, also cannot be expected to lead to actual notice to the mortgagee." 462 U.S. at 799, 103 S.Ct. at 2711. In this case, however, the Walthalls were partners in the Club, which not only could be expected to pass on the notices of administrative proceedings, but was required to do so by statute. 26 U.S.C. § 6223(g), (h)(2).

The Walthalls cite *Memphis Light, Gas & Water Division v. Craft*, 436 U.S. 1, 21 n. 26, 98 S.Ct. 1554, 1566 n. 26, 56 L.Ed.2d 30 (1978), for the proposition that due process is not satisfied merely because the aggrieved party could take action to avoid losing its protected interest. In *Memphis Light*, a utility accidentally failed to consolidate two electric meters for a household; as a result, the homeowners were double-billed. The utility had a procedure for disputing claims, but the homeowners were not informed of the existence of it. The Court held that "[n]otice in a case of this kind does not comport with constitutional requirements when it does not advise the customer of the availability of a procedure for protesting a proposed termination of utility service as unjustified. As no such notice was given respondents—despite 'good faith efforts' on their part—they were deprived of the notice which was their due." *Id.* at 14–15, 98 S.Ct. at 1563. However, this argument misses the point. The Act is not unconstitutional be-cause the Walthalls, had they been less passive about their investments, could have learned of the pending administrative action; rather, it is not unconstitutional because the government could conclude that it is "reasonably certain" that tax matters partners would carry out their statutory duty to pass on notices to the other partners. *See Mullane*, 339 U.S. at 315, 70 S.Ct. at 657–58.

■ Finally, the Walthalls contend that "this case demonstrates that the delegation of notice duties to the [tax matters partner] and pass-thru partners has a dismal track record of providing actual notice." However, there is absolutely no evidence in the record to support a generalization that tax matters partners and pass-thru partners do not pass on notice to other partners. Moreover, the Walthalls allude to the fact that the promoters of the Club engaged in fraud. Partnerships whose tax matters partner and pass-thru partners might have engaged in fraud are not the proper basis upon which to assess the efficacy of a notice provision, which is to "be judged in the light of its practical application to the affairs of men as they are ordinarily conducted." *Greene v. Lindsey*, 456 U.S. 444, 451, 102 S.Ct. 1874, 1879, 72 L.Ed.2d 249 (1982).

Therefore, we hold that the Act is reasonably calculated to provide sufficient notice to indirect partners such as the Walthalls.

**B.**

■ Next, the Walthalls argue that the Act violates the Originations Clause of the Constitution. Recognizing that we have rejected this argument in the past, *see Kerr v. United States*, 801 F.2d 1162, 1164 (9th Cir. 1986); *Jolly v. United States*, 764 F.2d 642, 644–45 (9th Cir.1985); *Armstrong v. United States*, 759 F.2d 1378, 1380–82 (9th Cir.1985), the Walthalls ask that we reverse ourselves. However, one panel may not overturn the decision of another panel. *United States v. Washington*, 872 F.2d 874, 880 (9th Cir.1989). Therefore, we hold that the Act does not violate the Originations Clause.

### C.

■ The Walthalls' third argument is that they properly provided their names and addresses to the IRS, and that under the statutory scheme, they were entitled to notice of the administrative proceeding.

According to the Walthalls, the IRS required that the Club file a Schedule K–1, identifying the Club's partners. The Club responded to the IRS request, providing the requested information. Thus, they argue, the IRS was in possession of their names and addresses, triggering the notice requirement of 26 U.S.C. § 6223(a) ("The Secretary shall mail to each partner whose name and address is furnished to the Secretary notice.").

However, the mere fact that the IRS possesses in its database the name and address of indirect partners does not mean that it has been "furnished with" this information. The Act specifies the manner in which the IRS is to create the information base for the purpose of sending notices:

> For purposes of this subchapter—
>
> **(1) Information on partnership return.**—Except as provided in paragraphs (2) and (3), the Secretary shall use the names, addresses, and profits interests shown on the partnership return.
>
> **(2) Use of additional information.**—The Secretary shall use additional information furnished to him by the tax matters partner or any other person in accordance with regulations prescribed by the Secretary.
>
> **(3) Special rule with respect to indirect partners.**—If any information furnished to the Secretary under paragraph (1) or (2)—
>
> > **(A)** shows that a person has a profits interest in the partnership by reason of ownership of an interest through 1 or more pass-thru partners, and
> >
> > **(B)** contains the name, address, and profits interest of such person,
>
> then the Secretary shall use the name, address, and profits interest of such person with respect to such partnership interest (in lieu of the names, addresses, and profits interests of the pass-thru partners).

26 U.S.C. § 6223(c). In 1987, the Secretary promulgated temporary regulations pursuant to section 6223(c)(2). *See* 26 C.F.R. § 301.6223(c)–1T.

In this case, none of the partnership returns listed the Walthalls or their address, and hence subparagraph (1) was not satisfied. With respect to subparagraph (2), the Walthalls do not dispute that they failed to comply with the requirements of the regulations. They argue, however, that the regulations were promulgated after the notices of administrative proceedings were sent out in this case, and hence, they could not possibly have complied with them.

We need not decide whether the regulations were effective prior to their date of promulgation. If they were not, then subparagraph (2) was not operative at the time the notices were sent, and the only way in which the Walthalls would have been entitled to receive a notice directly from the IRS would have been if they had satisfied subparagraph (1), which was not accomplished. If the regulations were applicable, then the Walthalls failed to comply with them and thus were not entitled to actual notice either.

■ Finally, the Walthalls contend that the phrase in subparagraph (2) "in accordance with regulations prescribed by the Secretary" modifies only "any other person" and not "the tax matters partner." In other words, the temporary regulations would apply only to information submitted by non-tax matters partners. Because the Club received a request for a Schedule K–1 from the IRS, the Walthalls contend that the tax matters partner submitted their name and address, thus satisfying subparagraph (2).

We read section 6223(c)(2) differently. The applicable regulation, 26 C.F.R. § 301.6223(c)–1T, makes a distinction between tax matter partners and all other persons. Specifically, subparagraph (d), titled "Information supplied by a person other than the tax matters partner," states that "[t]he Service may require appropriate verification in the case of information furnished by a person other than the tax matters partner." There would be no need for this distinction if the regulations did not apply to tax matters partners as well as non-tax matters partners.

The statute is not susceptible only to the Walthalls' interpretation; the IRS's interpretation of section 6223(c)(2) is reasonable. We must therefore show the IRS interpretation substantial deference. *Chevron U.S.A. v. Natural Resources Defense Council,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984); *Williams v. Babbitt,* 115 F.3d 657, 660 (9th Cir.1997).

We thus hold that the Walthalls failed to trigger the notice requirement of section 6223(a), and therefore were not entitled to direct notice pursuant to the Act.

AFFIRMED as to the Walthalls; DISMISSED as to the Camachos and the Raihls.

NOONAN, Circuit Judge, concurring and dissenting:

Cornwallis surrendered to Washington to the tune of *The World Turned Upside Down.* The surrender ended taxation without representation. The American republic has taken another turn when the government can successfully take the position that although it knows the identities of the taxpayers adversely affected by its action it has no obligation to tell them of the actions because the taxpayers failed to follow government regulations that were not in existence.

That the government knew the names and interests of the taxpayers is not disputed. That in 1985 (and indeed for five years) the regulations were not in existence is not disputed. So the government rests its case by pointing to 26 U.S.C. § 6223(c)(2) which says, "The Secretary shall use additional information furnished to him by the tax matters partner or any other person in accordance with regulations prescribed by the Secretary." No regulations, no need to use the additional information. Q.E.D.

Kafka could have designed such a world. I do not believe that Congress did. The whole purpose of § 6223 is to give notice to the partners affected. That is why the section is entitled "Notice to partners of proceedings." That is how the Constitution's requirement of due process is satisfied. On the government's theory, so long as the Secretary did not issue the regulations, the Secretary had no obligation to notify the indirect partners, although these are the partners whose tax liability is the bottom line. The statute need not be construed in this way. A fair and reasonable reading of the statute is that the Secretary shall mail notice "to each partner whose name and address is furnished to [him]," § 6223(a), and that, in the five year period in which no regulations existed, the restriction of this information to the "Information Base" described as that furnished "in accordance with regulations" was a nullity because it was impossible to comply with. The statute directs that all partners, including indirect partners, get notice. The Secretary's dilatoriness prevented literal compliance. The statute should be read in the light of its evident purpose: if the Secretary is furnished with the name and address and interest of a partner, the Secretary should let him know what the Secretary is doing. As important a principle as no taxation without representation is no taxation without notice.

I concur in the dismissal of the *Camacho* and *Raihl* cases for lack of jurisdiction. I dissent on *Walthall.*