BLOCK DEVELOPERS, LLC, WILLIAM J. MAXAM, APC, TAX MATTERS PARTNER, ET AL., Petitioner(s), v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Block Developers, LLC v. Comm'r
Docket No. 3198-10, 23598-12, 23599-12, 23600-12.
United States Tax Court
2014 U.S. Tax Ct. LEXIS 60; October 14, 2014, Decided
Jansson v. Comm'r, 2012 U.S. Tax Ct. LEXIS 58 (T.C., Jan. 26, 2012)
*60 For Block Developers, LLC, Partnership Action, William J. Maxam, APC, Tax Matters Corp., Fredrik Jansson, Niklas Jansson, Jan E. Jansson, (003198-10, 023600-12, 023598-12, 023599-12): Bruce Michael O'Brien, Laura L. Buckley, Higgs, Fletcher & Mack, San Diego, CA.
For Commissioner of Internal Revenue, Respondent (003198-10): Anna A. Long, San Diego, CA.
For Commissioner of Internal Revenue (023600-12, 023598-12, 023599-12), Respondent: Kris H An, East Pavilion, Thousand Oaks, CA.
Mark V. Holmes, Judge.
Mark V. Holmes
ORDER
This is a consolidated group of four cases that is heading to trial at a special session next month in San Diego. They all involve two tax years of a partnership named Block Developers, LLC that is subject to TEFRA.[1] One of TEFRA's requirements is that the Commissioner must notify the partners of a partnership that he has begun an audit.[2] Block's partners include four Roth IRA accounts, each held for the benefit of a particular individual.
NBAPs are important because, if a person who is entitled to get one doesn't, he receives in compensation a right to elect out of TEFRA's partnership-level proceedings and treat all his partnership items as nonpartnership items. IRC § 6223(e). This *61 can in turn mean an increase in the probability of the Commissioner's making a mistake in issuing a valid notice of deficiency, and sometimes that means that a partner wins his tax case on a procedural default.
Block's TMP[3] moved for partial summary judgment earlier this year on the issue of whether the Roth IRAs were pass-thru partners under TEFRA. Its theory was that those IRAs were not pass-thru partners — an important point because pass-thru partners, and not the Commissioner, must pass on NBAPs to their owners and their owners generally don't get a right to elect out of partnership proceedings if they fail to do so. We held in an order on February 25, 2014, however, that the IRAs were pass-thru partners, and denied Block's motion.
The case has now gone through discovery, and petitioners are back with a new summary-judgment motion. They now argue that the Commissioner was required to give the individual IRA account holders NBAPs under an exception to the general rule that we applied in deciding the last summary-judgment motion.
The Court assumes the parties are familiar with the background facts and the usual rules for summary judgment motions.
Our analysis begins with section 6223(a), which directs *62 the Commissioner to mail an NBAP to each partner whose name and address "is furnished to" the Service. Section 6223(c)(3) then has a special rule for indirect partners — those who, like the IRA account beneficiaries, have an interest in the partnership because they hold an interest in a pass-thru partner. That subsection tells the Commissioner to use the indirect partner's "name, address, and profits interest" in place of the pass-thru partner's in certain cases.
But what cases are those?
The first is when the partnership reports the "names, addresses, and profits interests" of the indirect partners on the partnership's own tax return. IRC § 6223(c)(1). Block concedes that its return did not have this information. Block Mtn. ¶ 25.
The second is when the Commissioner has "additional information furnished to him by . . . any . . . person in accordance with regulations . . . ." IRC § 6223(c)(2). The relevant regulation is 26 CFR § 301.6223(c)-1, which requires a TMP or other person furnishing this information to file a written statement with the Commissioner — and goes on at some length to describe what has to be in this statement and where it has to be filed. This regulation also requires that this formal written statement be filed at least 30 days before the *63 Commissioner mails the NBAP to the TMP. Block does not argue that anyone "furnished" information about its indirect partners in this formal and bureaucratic way.
Block, however, does argue that the Commissioner had the "names, addresses, and profits interests" of its indirect partners in its own records informally "furnished" or figured out by IRS agents it doesn't say — much more than 30 days before it mailed out the NBAP to Block's TMP for either of the two tax years at issue here. It argues that subsection 301.6223(c)-1(f) is the key.
This section gives the Commissioner leeway to use information about indirect partners that it learns other than from the face of a partnership return or a formal written statement. Here's the relevant language:
[T]he Internal Revenue Service may use other information in its possession (for example, a change in address on a partner's return) in administering [IRC sections 6221-6234]. However, the Internal Revenue Service is not required to search its records for information not expressly furnished under this section.
(Emphases added.)
Block says it learned through discovery (and, specifically, its carefully written requests for admission) that the Commissioner knew more than 30 days *64 before it mailed NBAPs to the TMP and the Roth IRAs (which were Block's direct partners) exactly who the indirect partners were. And Block is right that the Commissioner admitted that the agent working the audit knew those indirect partners' names and addresses, and that each of the four IRAs had exactly one beneficiary. See Block Mtn. Exh. 10.
Block acknowledges that the regulation specifically says that the Commissioner doesn't have to search its records, but it argues that once the agent working the case does so, he can't just drop a veil of ignorance over his face and continue the audit as if he didn't know what he in fact did.
Block further acknowledges that the first sentence of the quoted portion of the regulation seems to say that the Commissioner has discretion in using this information — that an agent can peek around the veil and still proceed as if he didn't know what he learned. But it argues that this reading would run headlong into the language of section 301.6223(c)-1(a) that promises that the Commissioner "will use additional information as provided in this section . . . ." (Emphasis added).[4] It argues that this "additional information" includes not just the face of the return and any formal *65 written statement, but information that an IRS agent happens upon in the course of his review of IRS records. The proper way to read these sentences together is therefore that it allows an agent not to search IRS records but requires him to use what he finds should he find something there.
This is not crazy. In Murphy v. Commissioner, 129 T.C. 82, 86 (2007), we agreed with the Commissioner that he is required to notify indirect partners once he realizes that he has "sufficient information identifying petitioner as an indirect partner . . . ." Of course, as the Commissioner points out, we also wrote that the Commissioner is "permitted" to do so. See id. at 87; and see Gaughf Properties, LP v. Commissioner, 139 T.C. 219, 233-34 and n.22 (2012) (identifying information on indirect partners must be furnished in particular way to trigger IRS action); Walthall v. United States, 131 F.3d 1289, 1296 (9th Cir. 1997) (same).
We hesitate to resolve such disputed and intricate readings on a motion for summary judgment. The Commissioner, however, also points out that section 6223(c)'s requirement that the Commissioner send NBAPs to indirect partners requires him to know not just their names and addresses but also their "profits interests."
As we've noted, Block got the Commissioner to admit that each IRA had only one beneficiary, but this is not the same as getting him to admit that he knew each IRA's *66 "profits interest." In these cases, that is a very contested ground. One of the Commissioner's arguments is that Block was actually a scheme to undervalue a related firm named Soil Retention, Inc. that Block purchased in what was arguably a far-from-arms'-length transaction to transfer value from its owners (beneficiaries of two of the IRAs involved) to their children (beneficiaries of the other two IRAs involved). The FPAA[5] lists several theories for why this violates the Code, and we have to agree with the Commissioner that one reason for his issuing the FPAA was that he did not know if the nominally equal beneficial interests of the indirect partners in fact was aimed at concealing what fundamental principles of tax law would show to be an unequal interest in the profits of the business that Block putatively owned.
This is a genuine dispute about a material fact, and so it is
ORDERED that Block's August 29, 2014 motion for partial summary judgment is denied.
/s/ Mark V. Holmes
Judge
Dated: Washington, D.C.
October 14, 2014
Footnotes
1. TEFRA is the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. No. 97-248, 96 Stat. 324, one part of which governs the tax treatment and audit procedures for most partnerships. See TEFRA secs. 401-406, 96 Stat. at 648-70↩.
2. Practitioners know this as an NBAP — Notice of Beginning of Administrative Proceeding.↩
3. TMP means "tax matters partner." Under TEFRA, a partnership must designate one of its partners as the TMP to handle its administrative issues with the Commissioner and manage any resulting litigation. IRC § 6231 (a)(7)↩.
4. Block also argues that the Code, in section 6223(c)(3), requires the same reading. That is wrong — section 6223(c)(3)↩ limits its command to instances where information is furnished to the IRS on the face of the partnership return or via the formal written statement. ("If any information furnished to the Secretary under paragraph (1) or (2) . . . .")
5. A final partnership administrative adjustment (FPAA) generally includes: (1) a Notice of Final Partnership Administrative Adjustment, (2) Form 870-PT, Agreement for Partnership Items and Partnership Level Determinations as to Penalties, Additions to Tax, and Additional Amounts, including a Schedule of Adjustments, and (3) an "Exhibit A-Explanation of Items," listing the Commissioner's other adjustments or determinations.↩