# United States Tax Court

REVIEWED
166 T.C. No. 6

JONES BLUFF, LLC, GREEN ROCK MANAGEMENT, LLC,
PARTNERSHIP REPRESENTATIVE,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket No. 577-24.                                   Filed March 19, 2026.

————

P is an LLC that is treated as a partnership for federal tax purposes. P is subject to the centralized partnership audit regime as established by the Bipartisan Budget Act of 2015 (BBA), Pub. L. No. 114-74, 129 Stat. 584. P claimed a charitable contribution deduction under I.R.C. § 170 for its donation of a conservation easement in 2019. R sent P a Notice of Final Partnership Adjustment (FPA) disallowing the charitable contribution deduction and asserting penalties.

P filed a Motion for Summary Judgment contending that the BBA partnership audit regime violates the due process rights of P's individual members.

*Held*: P cannot raise a due process claim under U.S. Const. amend. V on behalf of its individual members.

*Held, further*, the FPA is valid.

KERRIGAN, *J.*, wrote the opinion of the Court, which URDA, *C.J.*, and BUCH, NEGA, PUGH, ASHFORD, COPELAND, JONES, TORO, GREAVES, MARSHALL, WEILER, WAY, LANDY, ARBEIT, GUIDER, JENKINS, and FUNG, *JJ.*, joined.

BUCH, *J.*, wrote a concurring opinion, which COPELAND, WAY, JENKINS, and FUNG, *JJ.*, joined.

_____

*Gregory P. Rhodes*, *Emily C. Ellis*, *Kristin Martin Centeno*, *Sidney W. Jackson IV*, *Sarah E. Green*, and *Michelle A. Levin*, for petitioner.

*Jessica L. Leach*, *Ryan A. Ault*, *Rachel L. Gregory*, *Debora Ruiz*, and *Olivia H. Rembach*, for respondent.

OPINION

KERRIGAN, *Judge*: This case is before the Court on petitioner's Motion for Summary Judgment (Motion). Respondent issued a Notice of Final Partnership Adjustment (FPA) for the 2019 tax year to Green Rock Management, LLC (Green Rock), as partnership representative for petitioner, Jones Bluff, LLC. In the FPA respondent disallowed a charitable contribution deduction under section 170[1] and asserted penalties. In its Motion petitioner moves that the Court invalidate the FPA on the ground that the audit regime enacted by the Bipartisan Budget Act of 2015 (BBA), Pub. L. No. 114-74, 129 Stat. 584, deprived its individual members of due process.[2]

The issue for consideration is whether petitioner has standing to raise the individual due process rights of its members to invalidate the FPA. For the reasons discussed below, we hold that petitioner cannot raise this claim. Accordingly, we will deny the Motion.

*Background*

The facts set out below are derived from the parties' pleadings and Motion papers. *See* Rule 121(c)(1). They are stated solely for the purpose of deciding the pending Motion and are not findings of fact for

---

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code (Code), Title 26 U.S.C., in effect at all relevant times, regulation references are to the Code of Federal Regulations, Title 26 (Treas. Reg.), in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure.

[2] BBA § 1101(g), 129 Stat. at 638, governs the tax treatment and audit procedures for many partnerships, including petitioner.

this case. *See Sundstrand Corp. v. Commissioner*, 98 T.C. 518, 520 (1992), *aff'd*, 17 F.3d 965 (7th Cir. 1994).

Petitioner is an Alabama limited liability company that is treated as a partnership for federal tax purposes. For the 2019 tax year, petitioner is subject to the centralized partnership audit regime enacted as part of the BBA. Its partnership representative is Green Rock.

Petitioner's principal place of business was in Alabama when its Petition was timely filed.

Petitioner purportedly acquired a tract of land in Coosa County, Alabama, upon its formation. In December 2019 petitioner purportedly granted a conservation easement over the property to Pelican Coast Conservancy, Inc. Petitioner then timely filed Form 1065, U.S. Return of Partnership Income, for its 2019 tax year, claiming a charitable contribution deduction of $36,290,000 for its donation of the easement. Petitioner listed Green Rock as its partnership representative on its 2019 Form 1065.

In 2021 respondent selected petitioner's Form 1065 for examination under the BBA procedures. In October 2023 respondent sent the FPA at issue to Green Rock in its capacity as petitioner's partnership representative. In the FPA respondent disallowed the $36,290,000 cashless charitable contribution deduction and asserted an imputed underpayment of $13,427,300 and penalties of $5,359,968. On November 29, 2023, petitioner submitted to respondent Form 8988, Election for Alternative to Payment of the Imputed Underpayment – IRC Section 6226. On January 11, 2024, petitioner timely filed a Petition.

Petitioner contends in its Motion that the FPA is invalid because the partnership audit rules of the BBA violate the Due Process Clause of the Fifth Amendment to the U.S. Constitution by not providing individual partners in partnerships with notice and opportunity to be heard before being deprived of property. Respondent counters that petitioner does not have standing to assert the rights of its individual members as third parties to the lawsuit and that the claims of the members are not ripe. Petitioner contends that it does have standing to raise a due process claim on behalf of its members based on the third-party standing doctrine.

*Discussion*

## I. *Summary Judgment*

The purpose of summary judgment is to expedite litigation and avoid costly, time-consuming, and unnecessary trials. *Fla. Peach Corp. v. Commissioner*, 90 T.C. 678, 681 (1988). Under Rule 121(a), either party may move for summary judgment regarding all or any part of the legal issues in controversy. We may grant summary judgment only if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Rule 121(a)(2); *Sundstrand Corp.*, 98 T.C. at 520. The moving party bears the burden of demonstrating that there is no genuine dispute as to any material fact. *FPL Grp., Inc. & Subs. v. Commissioner*, 116 T.C. 73, 74–75 (2001). In deciding whether to grant summary judgment, we construe factual materials and inferences drawn from them in the light most favorable to the adverse party. *Sundstrand Corp.*, 98 T.C. at 520.

## II. *Overview of TEFRA, BBA, and Changes to the Partnership Audit Rules*

In 1982 Congress enacted the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. No. 97-248, §§ 401–407, 96 Stat. 324, 648–71, which significantly changed the procedures by which the Commissioner determined deficiencies relating to certain partnerships.[3] The TEFRA procedures were replaced in 2015 with the enactment of the BBA procedures. *See generally* BBA § 1101, 129 Stat. at 625.

Before TEFRA, the Commissioner made adjustments to items that flowed from a partnership at the partner level. *See SN Worthington Holdings LLC v. Commissioner*, 162 T.C. 228, 232 (2024). TEFRA established unified audit and litigation procedures through which the Commissioner could make adjustments at the partnership level. Specifically, section 6221 (TEFRA) provides that "the tax treatment of

---

[3] In 2015 Congress enacted BBA § 1101, 129 Stat. at 625–38, which amended the Code by striking the provisions of TEFRA §§ 401–407 and enacting new provisions using many of the same Code section numbers as TEFRA. BBA § 1101(a), (c)(1), 129 Stat. at 625–37. The BBA generally governs partnership audit and adjustment procedures for partnership returns filed for partnership years beginning after December 31, 2017. BBA § 1101(g)(1), 129 Stat. at 638. Because the BBA amended the Code by striking the TEFRA provisions and enacting new provisions using many of the same Code section numbers, we will parenthetically indicate whether we are referring to the BBA or to TEFRA when the context may not be otherwise clear.

any partnership item (and the applicability of any penalty, addition to tax, or additional amount which relates to an adjustment to a partnership item) shall be determined at the partnership level."

Under TEFRA the tax matters partner (TMP) represents the partnership at partnership-level proceedings. The TMP "serves as the focal point for service of all notices, documents, and orders on the partnership" and "is required to keep all partners informed of the status of" the judicial proceedings. *Comput. Programs Lambda, Ltd. v. Commissioner*, 89 T.C. 198, 205 (1987); *accord* § 6223(g) (TEFRA). Certain individual partners are entitled to direct notice from the Commissioner at the beginning of administrative proceedings and on issuance of a Notice of Final Partnership Administrative Adjustment (FPAA), and the TMP is required to keep all partners informed of all administrative and judicial proceedings. § 6223(a), (g) (TEFRA). Under the TEFRA procedures, adjustments are determined at the partnership level, but the assessment and collection of tax attributable to partnership items occur at the partner level. *See* §§ 6221, 6230(a)(2), 6231(a)(6) (TEFRA).

Under the TEFRA procedures, individual partners are treated as parties to judicial actions for reconsideration of the FPAA and have the right to participate in those judicial actions. § 6226(c) (TEFRA). Those rights are not absolute, however,[4] and in this Court are subject to the Tax Court Rules of Practice and Procedure. *See Blomquist Holdings, LLC v. Commissioner*, No. 8015-21, 165 T.C., slip op. at 16 (Sep. 17, 2025).

The BBA procedures were enacted to replace the TEFRA procedures in 2015. *See* BBA § 1101. The BBA applies to any entity that is required to file a partnership return under section 6031(a), including petitioner, or any entity that files a partnership return. §§ 6221(a), 6241(1), (8) (BBA).

The BBA further centralized the method for auditing, adjusting, assessing, and collecting tax from partnerships. "The BBA procedures

---

[4] This Court has stated that the TEFRA provisions that limit the notice and participation rights of individual partners "normally satisfy the requirements of due process because the tax matters partner, who receives notice and has the right to petition the Tax Court to reconsider the FPAA, acts as the agent for the other partners." *Blonien v. Commissioner*, 118 T.C. 541, 553 (2002) (first citing *Kaplan v. United States*, 133 F.3d 469, 475 (7th Cir. 1998); and then citing *Walthall v. United States*, 131 F.3d 1289, 1295 (9th Cir. 1997)), *supplemented by* T.C. Memo. 2003-308.

streamlined the audit process for partnerships by allowing audits, adjustments, *and payments* to all occur at the partnership level." *SN Worthington*, 162 T.C. at 233; *see* § 6221(a) (BBA). Instead of making a payment at the partnership level, however, any partnership may choose to "push out" the liability to its reviewed-year partners by making an election under section 6226, an election which petitioner has made. *See* § 6226(a) (BBA). Petitioner was not eligible to elect out of the BBA audit procedures for the 2019 tax year because one of its members was a limited liability company. *See* § 6221(b)(1)(C) (BBA).

Each partnership shall designate a partner or other person with a substantial presence in the United States as the partnership representative who will have the sole authority to act on behalf of the partnership. § 6223(a) (BBA). An audit under the BBA procedures begins with the Commissioner's mailing to the partnership and the partnership representative a notice that he has initiated an administrative proceeding. § 6231(a)(1) (BBA).

During the BBA audit proceedings the actions of the partnership bind all partners. § 6223(b) (BBA). The Commissioner determines partnership adjustments, if any, at the partnership level, and any tax attributable to those adjustments is assessed and collected at the partnership level. §§ 6221(a), 6225(a)(1), 6232(a) (BBA). Partnership adjustments include any adjustment to a partnership-related item, which includes any item that is relevant in determining the tax liability of any person or a partner's distributive share of any such item. § 6241(2)(B) (BBA).

Under the BBA procedures, the Commissioner shall mail the FPA to the partnership and the partnership representative. § 6231(a) (BBA). Individual partners themselves are not statutorily entitled to the FPA from either the Commissioner or the partnership representative. *See id.* Unlike partners in TEFRA judicial proceedings, individual partners may not initiate judicial proceedings under the BBA; the partnership is the only party that can. *Contrast* § 6226 (TEFRA), *with* § 6234 (BBA). Pursuant to section 6226(c) (TEFRA), all partners are treated as parties to a TEFRA action. *See N. Wall Holdings, LLC v. Commissioner*, No. 27773-21, 165 T.C., slip op. at 7 (Oct. 21, 2025).

The BBA establishes that the liability derived from the partnership adjustments is the partnership's liability as an entity. If the partnership adjustments result in an imputed underpayment, "the partnership shall pay an amount equal to such imputed underpayment."

§ 6225(a)(1) (BBA). The "partnership level" is where any tax attributable to adjustments "shall be assessed and collected." § 6221(a) (BBA). If a partnership fails to pay an imputed underpayment, then "[t]he liability of the partnership" will be reduced upon payment by an individual partner "for any amount with respect to which a partner is made liable." § 6232(f)(4) (BBA).

The change that the BBA made to our jurisdiction over partnership audits further confirms the partnership is liable as an entity. Under TEFRA,

> [a] court with which a petition is filed in accordance with this section shall have jurisdiction to determine all partnership items of the partnership for the partnership taxable year to which the [FPAA] relates, the proper allocation of such items among the partners, and the applicability of any penalty, addition to tax, or additional amount *which relates to an adjustment to a partnership item*.

§ 6226(f) (TEFRA) (emphasis added). Under the BBA,

> [a] court with which a petition is filed in accordance with this section shall have jurisdiction to determine all partnership-related items for the partnership taxable year to which the [FPA] relates, the proper allocation of such items among the partners, and the applicability of any penalty, addition to tax, or additional amount *for which the partnership may be liable under this subchapter*.

§ 6234(c) (BBA) (emphasis added).

The BBA provides an alternative to payment of the imputed underpayment by the partnership. Partnerships may choose to have their reviewed-year partners take into account the partnership adjustment by electing the application of section 6226 and furnishing to each partner and the Commissioner a statement of the partner's share of any adjustment. § 6226(a) (BBA). A partnership may also fail to pay the imputed underpayment, at which point the liability is passed

through to the adjustment-year partners. § 6232(f)(1) (BBA). Petitioner has elected the application of section 6226.[5]

III.  *Standing*

A.  *Article III Standing*

First, we must address respondent's argument that petitioner does not have standing to assert the rights of its individual members as third parties to the lawsuit. The doctrine of standing is derived from the Constitution's grant to the federal courts of "[t]he judicial [p]ower of the United States," U.S. Const. art. III, § 1, over "Cases" and "Controversies," *id.* § 2, cl. 1, and is "rooted in the traditional understanding of a case or controversy," *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337–38 (2016). Although the Tax Court is an Article I court, *see, e.g.*, *Freytag v. Commissioner*, 501 U.S. 868, 887–88 (1991), the case or controversy requirement presumptively applies to the exercise of our judicial power, *Ruesch v. Commissioner*, 25 F.4th 67, 70 (2d Cir. 2022), *aff'g in part, vacating and remanding in part per curiam* 154 T.C. 289 (2020); *see also Battat v. Commissioner*, 148 T.C. 32, 46 (2017).

The Supreme Court has established that standing requires three elements: (1) an "injury in fact," meaning an invasion of a legally protected interest that is "concrete and particularized" and actual or imminent, not conjectural or hypothetical; (2) causation, meaning that the injury is "fairly . . . trace[able]" to the challenged action of the defendant; and (3) redressability, meaning that the injury is "likely" to be "redressed by a favorable decision" of the court. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 38, 41 (1976)). A plaintiff must establish standing as to each claim and type of relief. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006).

Respondent does not contend that petitioner lacks standing to challenge the FPA. Under the traditional elements of standing, petitioner does have standing to challenge the FPA because petitioner (1) has been injured by the assertion of the imputed underpayment in the FPA with respect to the partnership's property (2) by respondent

---

[5] Petitioner has not yet furnished statements of its members' shares of adjustments to the individual members, as that would not be appropriate until this Court's decision is final. *See* Treas. Reg. § 301.6226-2(b)(1)(ii).

and (3) this Court has the power to redress petitioner's grievance with the FPA.  *See* §§ 6223(a), 6234(a) (BBA).

### B.    *Third-Party Standing*

Respondent's position is that petitioner lacks standing to assert the claim that the BBA partnership audit regime violates its members' due process rights under the Fifth Amendment to the Constitution. Respondent takes this position on the basis of the rule that a party cannot ordinarily "rest his claim to relief on the legal rights or interests of third parties."  *See Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004) (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975)).  Respondent contends that this rule forecloses petitioner from asserting its members' Fifth Amendment claim to invalidate the BBA.  However, the Supreme Court has stated that the rule against a party's resting its claims to relief on the rights of a third party is not absolute, and there may be circumstances where it is necessary to grant a third party standing to assert the rights of another.  *June Med. Servs. L.L.C. v. Russo*, 591 U.S. 299, 318 (2020); *see also Kowalski*, 543 U.S. at 129–30.

The third-party standing inquiry adds a second set of prudential considerations to the Article III requirement of injury in fact.  *Singleton v. Wulff*, 428 U.S. 106, 112 (1976).  Once a party has satisfied the requirements of Article III standing, the doctrine of third-party standing requires a plaintiff to meet additional factors to assert another party's rights.  *Kowalski*, 543 U.S. at 129–30 (conducting a threshold assessment of plaintiff's standing to raise the rights of others after assuming plaintiff's Article III standing).  A decision to grant third-party standing is one of "judicial self-governance."  *See Warth*, 422 U.S. at 509. "The usual and wise stance of the federal courts when policing their own exercise of power in this manner is one of cautious reserve."  *Singleton*, 428 U.S. at 124 (Powell, J., concurring in part and dissenting in part).

The prudential third-party standing inquiry requires weighing two predominant factors: (1) whether the party asserting the right has a close relationship with the person who possesses the right, and (2) whether there is a hindrance to the possessor's ability to protect their own interests.  *Kowalski*, 543 U.S. at 130.  Courts have been forgiving with these criteria in the context of First Amendment cases and in cases "when enforcement of the challenged restriction *against the litigant* would result indirectly in the violation of third parties' rights."  *Id.* at 131 (quoting *Warth*, 422 U.S. at 510).  Beyond these categories, courts "have not looked favorably upon third-party standing."  *Id.* at 130.

In *June Medical*, 591 U.S. at 320, doctors were permitted to challenge abortion restrictions as violating the rights of their potential patients. In *Department of Labor v. Triplett*, 494 U.S. 715, 720 (1990), attorneys were permitted to challenge a law that restricted the rights of clients to contract freely with them. In *Craig v. Boren*, 429 U.S. 190 (1976), a convenience store owner was permitted to maintain an equal protection claim on behalf of an underage patron seeking to purchase alcohol. In each of these cases there was cause and effect between the challenged restriction imposed on the litigant and the violation of the constitutional right of the third party.

The liability at issue in this proceeding is a liability of the partnership. To the extent that a partnership elects to pass its liability on to its members under section 6226, the members' liability will have resulted from the partnership's choice, not the enforcement of a restriction against the partnership. This case therefore does not belong to the class of cases where courts have traditionally been forgiving when determining whether to allow for third-party standing.

We disagree with petitioner's argument that the BBA audit procedures and the proceeding before this Court operate to deprive its individual members of property without due process, placing it in the class of cases where courts have been "forgiving" in their evaluation of the third-party standing factors. *See Kowalski*, 543 U.S. at 130. Unlike in those cases, where the incidence of the law on one person caused a violation of the rights of another, the statute at issue addresses only that the partnership may initiate the proceeding.

We address the two prongs of the third-party standing analysis against that background. The first prong in the third-party standing inquiry is whether the litigant has a "close relationship" with the person who possesses the right. *Id.* The Supreme Court has explained that this prong is based on concerns about a litigant's ability to effectively advocate for the right and sharply present the issue. *Singleton*, 428 U.S. at 114–15.

Petitioner has a "close relationship" with the individual members of the partnership in some sense because of their shared ownership of the partnership and petitioner's representative role for tax purposes. But a partnership, its representative, and its individual members may not always share a unity of interest in the context of litigation. We need not explore the precise contours of the relationship in this case. Even assuming the close relationship prong of the third-party standing

inquiry is satisfied, the second prong of the inquiry weighs strongly against permitting petitioner to assert the members' due process claims.

The second prong of the test for third-party standing is that there is a hindrance to the right-holder's ability to protect their own interests. *Kowalski*, 543 U.S. at 130. Although the individual members of the partnership, other than the partnership representative, are not granted a statutory right to participate directly in this proceeding, they remain free to raise their constitutional claims in future litigation.[6]

The statute does not hinder the members from presenting their due process claims, so it would not be appropriate to allow petitioner to assert those claims on the members' behalf. Petitioner therefore does not have third-party standing to assert its members' constitutional due process claims.

C.     *Ripeness*

Respondent also contends that petitioner's claims on behalf of the members are not ripe because any deprivation of their property "rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Texas v. United States*, 523 U.S. 296, 300 (1998) (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580–81 (1985)). For the claims to be ripe, this Court would need to decide in favor of respondent and petitioner would need to either (1) issue statements to its members to pass through its liability or (2) fail to pay the imputed underpayment and pass through its liability to the members.

The doctrine of ripeness "is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *Reno v. Cath. Soc. Servs., Inc.*, 509 U.S. 43, 57 n.18 (1993). The ripeness doctrine is intended "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a

---

[6] For example, the U.S. Court of Appeals for the Seventh Circuit in *Kaplan*, 133 F.3d at 474–75, considered the due process claims of an individual partner in a partner-level refund action after partnership-level determinations under the TEFRA audit rules. A similar action may be available here. *See, e.g.*, 28 U.S.C. §§ 1331, 1346. Likewise, a due process claim might be made in a collection due process proceeding. *See* §§ 6330(c)(2), 6320(b)(4).

concrete way by the challenging parties." *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 148–49 (1967).

We agree with respondent that the liability at issue in this proceeding is that of the partnership and not of the individual members. The passing on of that liability to the individual members will occur, if at all, as a result of petitioner's actions and not respondent's actions. Petitioner's actions therefore are "contingent future events" that render the claims it is making on behalf of the individual members not ripe at this time.[7]

Accordingly, petitioner cannot bring a due process claim on behalf of its individual members. We will deny the Motion.

We have considered the arguments made by the parties and, to the extent they are not addressed herein, we find them to be moot, irrelevant, or without merit.

To reflect the foregoing,

*An appropriate order will be issued.*

Reviewed by the Court.

URDA, *C.J.*, and BUCH, NEGA, PUGH, ASHFORD, COPELAND, JONES, TORO, GREAVES, MARSHALL, WEILER, WAY, LANDY, ARBEIT, GUIDER, JENKINS, and FUNG, *JJ.*, agree with this opinion of the Court.

---

[7] That the members of the partnership will be able to raise their constitutional due process claims in the future, once the outcome of this proceeding and the partnership's actions with respect to any required payment are known, serves to confirm that the claims before us are not now properly raised. *See Kaplan*, 133 F.3d at 474–75.

BUCH, *J.*, with whom COPELAND, WAY, JENKINS, and FUNG, *JJ.*, joined, concurring: I join the opinion of the Court in full. I write separately to address the underlying issue raised by petitioner in its Motion for Summary Judgment. Succinctly, petitioner contends: "The FPA is invalid because it deprives the individual partners of due process." Pet'r's Mot. Summ. J. 1 (No. 27). Petitioner expands on this contention, stating:

> Courts, including the Tax Court, have uniformly determined that the provisions of the Tax Equity and Fiscal Responsibility Act ("TEFRA") do not violate the Due Process Clause of the Fifth Amendment because the provisions of TEFRA provide the individuals subject to a potential adjustment sufficient notice and participation rights during a TEFRA examination and litigation proceeding.

*Id.* This passage from petitioner's Motion is misleading at best.

Under TEFRA, only some partners were entitled to notice from the Commissioner. In a partnership with more than 100 partners, only those partners with at least a 1% interest were entitled notice from the Commissioner. § 6223(b). Not only were those with a lesser interest (sometimes called "non-notice partners") not entitled to notice from the Commissioner, but they also did not have the right to file a petition with respect to a notice of final partnership administrative adjustment. § 6226(a) and (b); *see also Energy Res., Ltd. v. Commissioner*, 91 T.C. 913 (1988). Similarly, the Commissioner was not required to provide notice to indirect partners even though their tax liabilities would be affected by the partnership-level proceeding. *See, e.g.*, *Walthall v. United States*, 131 F.3d 1289 (9th Cir. 1997).

The TEFRA notice and petition provisions nonetheless have been held to provide adequate due process. In *Kaplan v. United States*, 133 F.3d 469, 475 (7th Cir. 1998), the TEFRA provisions survived a due process challenge vis-a-vis non-notice partners. And in *Walthall*, 131 F.3d at 1295, the TEFRA provisions likewise survived a due process challenge vis-a-vis indirect partners.

Partners who were not entitled to notice under TEFRA could nonetheless be bound by an outcome they viewed as undesirable. A non-notice partner or indirect partner might be bound by a notice of final partnership administrative adjustment if no partner who is eligible to

file a petition does so. *See, e.g.*, *Energy Res., Ltd.*, 91 T.C. at 917. Or such partners might be bound by the outcome of litigation of which they were unaware. *See, e.g.*, *Pettennude v. Commissioner*, T.C. Memo. 2022-79. Such partners might even be bound by a settlement to which they did not agree. *See, e.g.*, *Vander Heide v. Commissioner*, T.C. Memo. 1996-74.

The TEFRA provisions presupposed communication between the people who are in control of the partnership and the people who invest in it. *See* § 6223(g). But as several of the cases cited above indicate, that communication did not always occur. That lack of communication within the partnership, however, did not rise to the level of a due process violation. As we observed in *Vander Heide*, T.C. Memo. 1996-74, slip op. at 8:

> We sympathize with [the partners], but must point out that [they] are not victims of [the Commissioner] or the Internal Revenue Code. They are victims of unscrupulous purveyors of tax shelters . . . . [They] are also victims of their own greed and naivete by investing in these scams, obtaining outrageous deductions and credits without paying attention to the details of the tax laws, nor putting into place some sort of check and balance system to monitor their own investments.

The BBA, like TEFRA, provides notice to a central figure of the partnership. As we held in *Vander Heide*, when communication between that central figure and other partners breaks down, it is not the fault of the Commissioner or the notice provisions of TEFRA. As for the notice provisions enacted by the BBA, for the reasons stated in the opinion of the Court, we need not decide whether we would reach the same result. But the jurisprudence surrounding the TEFRA notice provisions does not support petitioner's position.